THE PEOPLE, ex rel. EDWARD T. WOOD, Appellant, *v.* E. HENRY LACOMBE, Respondent.

It was the intention of the legislature in passing the act (Chap. 43, Laws of 1884), conferring upon the mayor of the city of New York the power to make, without confirmation by the board of aldermen, the appointments which theretofore required the confirmation of that board, as

appears by the fact that the act was not to take effect until January 1, 1885, after an election at which a mayor would be elected, to withhold the power from the mayor then in office and to confer it upon the mayor so to be elected.

It is to be interpreted, therefore, in connection with the provision of the Consolidation Act of 1882 (§ 31, chap. 410, Laws of 1882), which provides that the mayor's term of office shall commence at noon on the first day of January next after his election; and in providing that it should take effect on that day, it was intended by the legislature that it should, and it did go into operation at 12 o'clock, noon, the time when the new mayor went into office.

Where, therefore, on the 1st day of January, 1885, before 12 o'clock, noon, the president of the board of aldermen appointed the relator corporation counsel, claiming that the term of the old mayor, by the city charter of 1873, expired at midnight December 31, 1884, and so there was a vacancy in the office from that time until 12 o'clock, noon of January 1st, when the term of the new mayor commenced; and that during the interim he was authorized by the Consolidation Act (§ 32) to act as mayor, and could exercise the power of appointment conferred by the said act of 1884. *Held,* that the claim was untenable and the appointment invalid; and that defendant who was appointed by the new mayor after the beginning of his term was entitled to the office.

(Argued March 20, 1885 ; decided April 14, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made January 28, 1885, which directed judgment in favor of defendant, rendered upon a case submitted under section 1279 of the Code of Civil Procedure.

The material facts are stated in the opinion.

*David Dudley Field, Robert Sewell, Aaron J. Vanderpoel, George Bliss* and *George H. Forster* for appellant. The office of Mr. Edson was an elective office, and could not be extended by legislative act. (*People, ex rel. v. Bull,* 46 N. Y. 57 ; *Long* v. *Mayor,* 81 id. 485 ; *Green* v. *Whitlock,* 92 id. 191.) Mayor Grace's term could possibly be extended forward or backward so as to be held to commence before noon of January 1, 1885. (*Long* v. *Mayor, etc.,* 81 N. Y. 425 ; *Olmstead* v. *Denis,* 77 id. 387 ; *Supervisors, etc.,* v. *People,* 7 Hill, 511 ; Sedg. on Stat. & Const. Law, 382 ; *Wappels Co.* v. *Bigham,*

10 Iowa, 39; *People* v. *Barnett*, 100 Ill. 332; *People* v. *Brennan*, 3 Cal. 477.) It is only in cases where the meaning of statutes is doubtful that the courts are authorized to indulge in conjectures as to the intention of the legislature, or to look to consequences in the construction of the law; when the meaning is plain and unambiguous, the act must be carried into effect according to its language, or the courts would be assuming legislative authority. (*Woodruff* v. *Mech. Bk.*, 25 Wend. 673; *Bowen* v. *Newell*, 8 N. Y. 190; *Higgins* v. *Moore*, 34 id. 417; *Easton* v. *Pickersgill*, 55 id. 310; *Fellows* v. *Mayor, etc.*, 17 Hun, 249; *Scott* v. *Reid*, 10 Pet. 524; Dwarris on Statutes, note 3, ed. of 1875.) It is contrary to the doctrine of the common law for a public officer to hold over beyond his specified term. (*People* v. *Tiernan*, 30 Barb. 193; *Tully* v. *State*, 1 Carter [Ind.], 500.) The case of the mayor of New York is in the same category as that of any other elective officer. Respecting other officers, the Court of Appeals has held that their terms cannot be extended, either by implication or by a direct legislative act. (*People, ex rel. Hill*, v. *Wood*, 46 N. Y. 57; *People* v. *McHenry*, 52 id. 574; *People* v. *Crooks*, 53 id. 648; *People* v. *Wood*, 91 id. 616; *Woodruff* v. *Brooks*, 25 Wend. 673; *Bowen* v. *Newball*, 8 N. Y. 190; *Higgins* v. *Moore*, 34 id. 417; *Fellows* v. *Mayor, etc.*, 17 Hun, 249.) A public officer cannot be deprived by mere implication of the powers conferred upon him for public purposes by a clear provision of law. (*Andrews* v. *Van Tassell*, 53 N. Y. 631; *Drake* v. *Gilmore*, 52 id. 389.) Mr. Kirk, when he acted as mayor, and appointed the relator to the office of corporation counsel, was a *de facto* officer, as well as *de jure*, and the acts of a *de facto* officer are good as to third persons and strangers; and the appointee of a *de facto* mayor is a third person within the rule. (*People, ex rel. Stiners*, v. *Anthony*, 6 Hun, 142; *Mayor* v. *Flagg*, 6 Abb. Pr. 296, 302.) It is not necessary that a law amending a municipal charter should specify that it is an amendment to a charter, or to a particular part of it; it is sufficient if it so operates, if its provisions affect the corporation in its government. (*People, ex rel.* v. *Briggs*, 50 N. Y. 553.)

There was the vacancy in the office of mayor, the filling of which, by the president of the board of aldermen, was provided for by law. (*State* v. *Allen*, 21 Ind. 516.) No vacancy can be said to exist in an office once filled till the term of service expires, or till the death, removal or resignation of the person appointed. (*Johnson* v. *Wilson*, 9 Am. Dec. 50.) It was contrary to the common law for a public officer to hold over beyond his term. (*People, ex rel.* v. *Tiernan*, 30 Barb. 193.) Mr. Edson's term was not, neither could it be, extended to noon, January 1, 1885. (*People, ex rel.* v. *Bull*, 46 N. Y. 57; *Long* v. *Mayor*, 81 id. 485; *Green* v. *Whitlock*, 92 id. 191.) After the expiration of his term of office, to-wit, after the beginning of the 1st day of January, 1885, Mr. Edson was neither *de facto* nor *de jure* an incumbent of the office. (*Long* v. *Mayor*, etc., 81 N. Y. 435; *Olmstead* v. *Denio*, 77 id. 378.) A public officer cannot be deprived, by mere implication, of the powers conferred upon him for public purposes by a clear provision of the law. (*Andrews* v. *Van Tassell*, 53 N. Y. 631; *Drake* v. *Gilmore*, 52 id. 389; *People* v. *Metzkice*, 47 Cal. 524.) Mr. Kirk was mayor *de facto* and *de jure*. (*People, ex rel.* v. *Anthony*, 6 Hun, 142; *Mayor* v. *Flagg*, 6 Abb. Pr. 296; *State* v. *Leary*, 4 Cent. L. J. 156.) An office may be vacated by abandonment, or resigned by parol, and the existence of a vacancy in either case will depend upon all the facts and circumstances attending the same. (*State* v. *Allen*, 21 Ind. 516.)

*James C. Carter*, *Charles F. Southmayd* and *Thomas Allison* for respondent. In determining the various questions arising in this case, the court is not tied down to any mere verbal or literal interpretation of the several statutes on which such questions depend. The intention of the legislature must be sought for, and these statutes must, if possible, be so construed as to carry out such intent. (*People, ex rel.* v. *Com'rs*, etc., 95 N. Y. 554; *Burch* v. *Newbury*, 10 id. 389; *Oswego S. F.* v. *Dolloway*, 21 id. 449; *People* v. *N. Y. C. R. R. Co.*, 13 id. 78; *Donaldson* v. *Wood*, 22 Wend. 395; *Edwards* v. *Elbert*, 12 Johns. 466; *Main* v. *Prosser*, 1 Johns. Cas. 131;

*Ailwary* v. *Gurrous Doug.*, 3 Bing. 193.) The legislature intended that the power conferred by the act of 1884 (Chap. 410) should not be exercised by the officers in office when it was passed, but should be exercised only by the officers to be elected at the elections in November, 1884, and thereafter, by the whole body of the electors, with a view to the exercise by them of the powers conferred by this act. (*Burch* v. *Newbury*, 10 N. Y. 389; *Elmendorf* v. *Mayor, etc.*, 25 Wend. 693.) Mr. Kirk was not president of the board of aldermen between midnight of December 31, 1884, and noon of January 1, 1885. (1 R. S. [Edm. ed.] 107, § 3; Laws of 1884, chap. 74; Laws of 1880, chap. 4.) There was no vacancy in the office of mayor of the city of New York within the meaning of section 32 of said Consolidation Act. (Chap. 410, Laws of 1882; *Tappan* v. *Gray*, 9 Paige, 507; *People* v. *Van Horne*, 18 Wend. 515; *Elmendorf* v. *Mayor*, 25 id. 693; *People* v. *Ferris*, 16 Hun, 219; Const. 1777, § 23; Const. Amendments, 1801, § 5; Const. 21, art. 4, § 10; Laws of 1824, 380 chap. 328; 1 R. S., chap. 5, tit. 5, § 12 [Edm. ed.], 105; 1 R. S. chap. 5, tit. 6, art. 1, § 9 [Edm. ed.], 107.) As the existing statutes provided that the mayor should hold over until his successor entered upon the duties of his office, there was no vacancy to be filled while he so held over. (*Tappan* v. *Gray*, 9 Paige, 507; *People* v. *Van Horne*, 18 Wend. 515; *Pell* v. *Ullmer*, 21 Barb. 500; *People* v. *Woodruff*, 32 N. Y. 355; *People* v. *Crissey*, 91 id. 634; *People, ex rel. Furman*, v. *Clute*, 12 Abb. Pr. [N. S.] 399; *Elmendorf* v. *Mayor, etc.*, 25 Wend. 693.) The legislature had power to provide otherwise than by election a person to temporarily perform the duties of an office which is elective by the Constitution, in cases where the machinery of election failed to furnish such person. No constitutional authority so to do is necessary. (*People* v. *Snedeker*, 14 N. Y. 52; *People* v. *Fisher*, 24 Wend. 215; *People* v. *Bull*, 46 N. Y. 57; *People* v. *Batchellor*, 22 id. 128; *People* v. *Woodruff*, 32 id. 355.) There is a distinction between a "vacancy" and an "expired term." (*People* v. *Gardner*, 54 N. Y. 316.) The rule that a *de facto* officer's acts are valid

as to strangers and third persons has no application to the question of the right or title of his appointee to the office to which he has been appointed. The appointee is not a stranger or third person within the rule mentioned. (*People, ex rel.* v. *Anthony,* 6 Hun, 142; *Mayor* v. *Flagg,* 6 Abb. Pr. 296.)

MILLER, J. This case arises upon an appeal from a judgment rendered in favor of the defendant, upon the submission of a controversy, which involves the title to the office of corporation counsel of the city of New York.

The defendant held the office by virtue of an appointment made by Mayor Edson, on the 31st of May, 1884, to fill a vacancy, which was confirmed by the board of aldermen. Said appointment terminated on the 10th of December, 1884, and defendant held over in accordance with the statute, which provided that he should continue to discharge the duties of his office until his successor was appointed and had qualified. On the 1st of January, 1885, the relator was appointed corporation counsel, by one William P. Kirk, who claimed to be the president of the board of aldermen, and as such assumed to act as mayor of New York, between the hours of 12 o'clock, midnight, of December 31, 1884, and 12 o'clock, noon, of January 1, 1885. On the 14th of January, 1885, William R. Grace, the then mayor of said city, re-appointed the defendant to the office he then claimed to fill.

The right of the relator to the office in question is based upon the ground that the term of Mayor Edson, by the charter of 1873, expired on the 31st of December, 1884, at midnight, and that by the Consolidation Act, so called (Chap. 410, Laws of 1882), the term of Mayor Grace did not commence until 12 o'clock, noon, of January 1, 1885, and therefore there was a vacancy in the office of mayor for twelve hours intervening, and that thereby William P. Kirk had the power, as mayor, to appoint the relator counsel to the corporation without the consent of the board of aldermen:

The defendant, on the contrary, insists that no such vacancy existed; that Kirk had no authority, as mayor, to make the

appointment, and that it legally devolved upon the incoming mayor, Mr. Grace, who was vested with full power for that purpose. The defendant also insists that if, by any construction of the statutes, it should be held that there was a vacancy in the office of mayor, and any appointment should have been made during the interval stated, it devolved upon one Adolph L. Sanger, who, at the election in November, had been chosen to the office of president of the board of aldermen, under chapter 74 of the Laws of 1884, and had qualified by taking the oath of office, etc., and who claimed that his term began January 1, 1885, thus superseding the rights of Kirk as president of the board of aldermen, and that he was clothed with all the powers and authority of mayor during the twelve hours named, provided any vacancy existed in that office.

The questions presented involve the consideration of the statutes already referred to, as well as various others which have a bearing upon the effect to be given to those cited.

In the interpretation of statutes, the great principle which is to control is the intention of the legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute as well as other circumstances. A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter. It is the spirit and purpose of a statute which are to be regarded in its interpretation; and if these find fair expression in the statute, it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal meaning of some provisions of the statute. A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the lawmakers. These general rules are upheld by numerous authorities. (*People, ex rel. 23d Street R. R. Co.* v. *Commissioners of Taxes*, 95 N. Y. 558; *Burch* v. *Newbury*, 10 id. 389; *Oswego Starch Factory* v. *Dolloway*, 21 id. 461; *People* v. *N. Y. C. R. R. Co.*, 13 id. 78; *Donaldson* v. *Wood*, 22 Wend. 397; *Water-*

*vliet T. Co.* v. *McKean*, 6 Hill, 619; 3 Bingham, 193; *Commonwealth* v. *Kimball*, 24 Pick. 370.) While the rules stated are specially applicable in considering the phraseology of statutes, they may also be properly invoked where several statutes are passed relating to the same general subject. In *Commonwealth* v. *Kimball* (*supra*), it is said by SHAW, C. J., that "where any particular construction would lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the legislature to avoid such conclusion." Where it is apparent that a strict construction of a statute would defeat the main purpose and object, not only of the statute, but of other legislative enactments which relate to the same subject, and which have been enacted in pursuance of and according to a general purpose of accomplishing a particular result, such interpretation should not be upheld, as it would be absurd to say that the law-makers designed to secure a result which would be antagonistic to their plain and clear intention.

The general rules to which we have referred must be borne in mind in the consideration of the question presented, and having these in view we are brought to the conclusion, after a careful examination of the statutes relied upon to sustain the authority of William P. Kirk, that no power was vested in him to make the appointment of corporation counsel at the time named.

By the Consolidation Act (Laws of 1882, chap. 410, § 106), the power to appoint the corporation counsel was vested in the mayor subject to the consent of the board of aldermen. This provision was in force until chapter 43 of the Laws of 1884, passed March 17 of that year, went into effect. The act of 1884 is entitled "An act to centre responsibility in the municipal government of the city of New York," and provides as follows: "Section 1. All appointments to office in the city of New York, now made by the mayor and confirmed by the board of aldermen, shall hereafter be made by the mayor without such confirmation. § 2. This act shall take effect January 1, 1885."

It will be seen that this act was to take effect on the 1st of January, 1885, some ten months after its passage. It is, therefore, a fair and legitimate presumption that the members of the legislature knew that an election would be held in November following the passage of the act, at which a mayor would be elected, who, in accordance with the provisions of section 31 of the Consolidation Act of 1882, would take office on the 1st day of January, 1885, at 12 o'clock, noon, and that, by section 29 of the same act, the board of aldermen then existing would continue in office until the first Monday, the 4th of January, 1885, at noon. And even if it may be assumed that Mr. Kirk remained president of the board until the first Monday of January, 1885, at noon, and that Mr. Sanger, who was elected president of the board of aldermen in the fall of 1884, did not take office until that time, it is fairly to be presumed that these facts must have been known to the legislature. So, also, if it be assumed as a fact that a vacancy in the office of mayor did exist, during the twelve hours referred to, within the meaning of section 32 of the Consolidation Act, and that thereby Mr. Kirk succeeded to the rights and authority of the mayor during that period of time, the legislature must be regarded as having knowledge that these things would occur.

It must also be considered that the members of the legislature understood that the act of 1884 was designed and passed, having in view the public interest and with the intention of depriving the board of aldermen of any authority whatever in the appointing of heads of departments.

Under these circumstances, and in consideration of the fact that the legislature deferred the time for the taking effect of chapter 43 of the Laws of 1884, which conferred upon the mayor the absolute power of appointment without the consent of the board of aldermen, until the 1st of January, 1885, it is a fair and reasonable conclusion that it was intended by the law-makers that the power conferred by the act in question should not be exercised by those in office at the time when it was enacted, but should be vested in the mayor who should

be chosen at the next election.  The object of the legislature
in depriving the mayor then in office of the power alone to
make appointments without the consent of the board of alder-
men for a period of ten months, evidently was to vest such
power in the mayor who was elected to succeed him.

It is very manifest, from an examination of the various stat-
utes bearing upon the question considered, that it was never
designed by the legislature, while depriving the existing mayor
of the power to appoint for ten months, and making provis-
ions which conferred upon the incoming mayor full authority
to make appointments without the consent of the board of
aldermen, to leave a period of time, consisting of a few hours
between the close of the term for which the mayor in office
was elected and the time when his successor should commence
to serve, during which the president of the board of aldermen
should be vested with the power of making appointments with-
out the consent of those over whom he presided, and that he
should have the same authority as the incoming mayor to make
appointments of his own volition and without regard to the
restraint previously existing against any such right.  In other
words, that at or near the close of his term his powers should
be enlarged and his jurisdiction extended so as to enable him
to make appointments without any restraint whatever.  Such
an interpretation can only be maintained by an entire disregard
of the intention of the legislature, and by a narrow and re-
stricted construction of the laws relating to the subject.  The
effect of it would be to enact laws which would establish a
particular policy for the local government of the city of New
York, for a period of twelve hours, in entire conflict with pre-
vious laws as well as the policy inaugurated by the act of 1884.
Another consequence would follow such a construction, and
that is that the intention of the legislature was to with-
hold from the mayor then in office, elected by the people at
large, the power of appointment expressly conferred by reason
of the provisions in the act of 1884, deferring its operation for a
period of ten months, and then it would allow its exercise by
the president of the board of aldermen, who was not elected

such president by the people but by his fellow aldermen, who, like himself, were all elected, not by the people at large, but by those residing in their respective limited districts. Such imputations upon the legislature are not to be indulged and do not rest upon any reasonable ground.

In the consideration of the question discussed, it should not be overlooked that the same legislative body, on the 29th of March, 1884, passed an act entitled " An act relating to the board of aldermen of the city of New York," which provided that " At the next general election to be held in the city of New York, and annually thereafter, there shall be elected an additional alderman for said city, who shall be known as the president of the board of aldermen, and who shall possess all the rights, privileges and powers and perform the duties now conferred or imposed upon the president of said board." This act was to take effect immediately. The evident object and purpose of this act was to provide that an officer should be elected by the body of the people who would take the place of the president who, under the previous provisions of law, had been elected by the board of aldermen itself. This act in connection with chapter 43 of the Laws of 1884, indicates a clear intention on the part of the legislature that the power and responsibility of appointing the heads of departments in the city of New York, should be concentrated in a public official elected by the people at large and not by those who held office at the time when the act was passed. The two acts last named are in *pari materia*, and should be construed and read together as constituting a part of an entire system or scheme intended to change the appointing power and place it in different hands and to impose upon a single individual, the first executive officer of the city, the duty of selecting a certain class of its public servants. A change was to be made, a new system inaugurated which would remedy the evils supposed to exist and the embarrassments which attended the exercise of the power of appointment under the law as it had previously been in force. These two acts must also be interpreted in connection with section 31 of the Consolidation Act of 1882, which

provides that the mayor's term of office shall commence at noon on the first of January next after his election. Taking all these acts together and having in view the intention of the legislature and the object to be attained, it is apparent that they were intended to go into effect at one and the same time. Any other construction would render the two acts of 1884 cited, fruitless and of no avail for the time being, and incorporate into the new system which was adopted an anomalous and most extraordinary power which never was intended and which could answer no good end or proper purpose, but only tend to defeat the contemplated object in view.

Considering the language employed in chapter 43 of the Laws of 1884, and the circumstances under which it was enacted and the other statutes which relate to the subject, the conclusion seems very clear that the legislative intention was that the provisions contained in chapter 43, *supra*, in reference to the power to make appointments, should take effect the very moment the new mayor commenced his term of office and not before. The legislature, in providing that it should take effect on that day, intended to say that it should go into operation at twelve o'clock noon, at the same time the new mayor went into office.

In the case of *People, ex rel. McCann*, v. *Kilbourn* (68 N. Y. 479), the charter of the city of Albany provided that the mayor, with the consent and approval of the common council, " shall biennially appoint " certain officers named, " who shall continue in office until their successors have been appointed and duly qualified," and it was held that this related to the time when the appointment should be made, and was not intended to fix the term of office of the appointees without regard to the time of appointment; that where a street commissioner was appointed just prior to the expiration of the term of office of the then mayor, and a new appointment was made by his successor, that the latter appointee was entitled to the office.

The case was disposed of upon the ground that the intention of the legislature was, as indicated by the charter, that the municipal government should be under the control of the

officers who are required to be elected for a period of two years, and under said provision it is the duty of each newly elected mayor, immediately upon his accession to the office, to make the appointments designated, without regard to the question whether the then incumbents have served for more or less than two years. This conclusion was arrived at in view of the general policy of the act and the intention of the legislature, and the case has a direct bearing upon the question under consideration. It is said in the opinion that " the intention of the legislature and the general purpose of an act cannot be set aside by a single amendment of the law, even although its meaning is not entirely clear, and in the interpretation of statutes we must consider the main object in view, as well as the general scope of their leading provisions. It would not be in accordance with 'general and well-settled principles established by law to hold that even if by inadvertence, carelessness or otherwise an amendment has been made to a statute which may in a single instance, interfere with the enforcement of the purpose indicated in other provisions of an act of the legislature, the whole fabric, for that·reason, must fall and fail ·to answer the ends designed, and that such amendment must control." These remarks are specially applicable to the facts presented in the record before us and are directly in point.

Under the circumstances presented Kirk had no power to appoint the corporation counsel, and the attempted appointment made by him was of no avail. This interpretation is in harmony with the object to be attained, while a different one would lead to perplexity, uncertainty and confusion. It follows that the defendant was lawfully appointed by Mayor Grace, and is entitled to hold the office.

The conclusion at which we have arrived renders it unnecessary to determine whether there was any vacancy in the office of mayor between the hours of twelve o'clock, midnight of the 31st of December, 1884, and twelve o'clock, noon, of the 1st of January, 1885, as well as the other questions which were raised and presented upon the argument of this appeal.

The judgment of the General Term, affirming the judgment of the trial court, should be affirmed.

All concur.

Judgment affirmed.