CITY OF NEW YORK *v.* THIRD-AVE. R. Co., (two cases.)

(*Supreme Court, General Term, First Department.* May 18, 1888.)

HORSE AND STREET RAILROADS—LICENSE TAX—CONSTRUCTION OF CITY ORDINANCE.

The acts of a municipal corporation are subject to the more liberal rules of interpretation applicable to statutes, so that, under the resolution of the city council pro-

viding that defendant shall pay "the annual license fees for each car now allowed by law," the only license fees at the time allowed being those provided for by the ordinance of 1839, "for every accommodation coach or stage or stage-coach, * * * the sum of $20, when drawn by two horses," defendant is liable for such license fees for its horse cars, the cars being run on routes similar to the routes of the stage coaches. MACOMBER, J., dissenting.

Appeal from circuit court, New York county.

These actions were brought by the city of New York against the Third Avenue Railroad Company to recover of the defendant the aggregate amount of the annual license fees of $20 for each car operated by defendant, No. 1 upon its main line, and, No. 2, upon its so-called "Grand Central Line." The actions were founded upon a certain resolution adopted by the plaintiff, December 31, 1852, and subsequently, and on January 1, 1853, embodied in a written agreement between the plaintiff and certain persons to whose rights the defendant has succeeded by assignment. The material part of the resolution and agreement is as follows: "(3) Resolved, that in consideration of the good and faithful performance of the conditions, stipulations, and agreements above prescribed, and of such other necessary requirements as may hereafter be made by the common council for the regulation of said railroad, the said parties shall pay, from the date of opening the said railroad, the annual license fees for each car now allowed by law, and shall have license accordingly." The claim of the plaintiff is that the defendant should pay annually $20 for each car run by it upon its railway. At the time of the passage of the resolution, and of the agreement, there was in existence no ordinance of the city of New York imposing upon the defendant, or upon any other street-railway company, the duty to pay $20 a car for each car used upon its lines. But by section 5 of an ordinance of the city of New York, passed May 8, 1839, treating "of stages or accommodation coaches," it was provided as follows: "Every person licensed by virtue of the provisions of this title shall pay to the mayor of the city of New York, for the use of the city, for every accommodation coach or stage or stage-coach which such person shall keep, the sum of twenty dollars, when drawn by two horses." The trial justice deemed this ordinance applicable, and directed a verdict for the plaintiff in both actions; and defendant appeals from the judgment in the two actions, and from the orders denying motions for new trials.

Argued before VAN BRUNT, P. J., and BARTLETT and MACOMBER, JJ.

J. P. Lowery, Edward Lauterbach, and John E. Parsons, for appellant. John J. Townsend, (Morgan J. O'Brien, of counsel,) for respondents.

VAN BRUNT, P. J. In the consideration of the question arising upon this appeal, regard must be had to the rules controlling the interpretation of statutes. Although the resolution out of which the right of the defendant to enjoy its privileges grew was the act of a municipal body, such body had certain limited legislative powers, and the rights of the parties are to be considered and construed by the same rules as those which govern the interpretation of statutes. The claim made by the defendant that the act resulting in the rights conferred upon the defendant was a mere private contract, and not, therefore, subject to the rules of interpretation governing the construction of statutes, cannot prevail, because in the passage of the resolution the common council of the city of New York were exercising a legislative power which they supposed they possessed. In the case of People v. Lacombe, 99 N. Y. 49, 1 N. E. Rep. 599, the highest court in this state has laid down this rule as governing the construction of statutes: "In the interpretation of statutes, the great principle which is to control is the intention of the legislature in passing the same, which intention is to be ascertained from the cause and necessity of making the statute as well as other circumstances. A strict and literal interpretation is not always to be adhered to, and, where the case is brought within the intention of the makers of the statute, it is within the statute, al-

though by a technical interpretation it is not within its letter. It is the spirit and purpose of a statute which are to be regarded in its interpretation, and, if these find fair expression in the statute, it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal meaning of some provisions of the statute. A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the law-makers." Applying these rules to the legislation under consideration, if we find that there was a certain intention in passing the same, and this intention finds its fair expression in the statute, we must give effect to such intention, although it is not strictly within its letter. The legislation in question was substantially the introduction of a new system by which passengers were to be carried from one part of the city to another in public conveyances. This service had, prior to this time, been almost exclusively performed by accommodation coaches or stage-coaches. These vehicles were licensed and restricted to certain defined streets and routes. Upon the proposed line of the defendant such a line of stage-coaches existed at the time of the passage of the resolution in question, which paid an annual license fee of $20 for each stage-coach drawn by two horses. These accommodation coaches or stage coaches thus licensed were the only vehicles which ran upon fixed routes for the public accommodation. To furnish these same accommodations, but in a more complete and commodious manner, the street car railway system was devised; the only difference between the railway car and the stage-coach being that the former was confined to a fixed track, constructed in the street, and unable, or at least not intended, to travel upon any other portion thereof. The street car was an accommodation coach for the use of the public as much as a stage, and subserved precisely the same purposes; and the mere fact that it was more restricted in its line of travel than the stage in no way took from it this distinctive character. The common council, in the legislation in question, intended that these street cars should be licensed, and that they should pay a fee for such license. This is the plain purport of the language used. It was provided that the defendant should pay the annual license fee for each car now allowed by law, and should have licenses accordingly.

The common council in this legislation evidently had in mind some particular license fee which was then allowed by law, and this license fee it was intended should be paid for each car. It is to be observed that it is not the car license fee now allowed by law which is to be paid, but the license fee now allowed by law. Can there be any doubt as to what license fee was referred to in view of the circumstances above mentioned? For each of the vehicles which ran upon designated routes for the public accommodation a license fee was required to be paid and a license was necessary. The cars in question were intended to subserve the same purposes, they were to be accommodation coaches for the the use of the public, and can there be any doubt but that the license fee referred to in the resolution in question was the license fee paid by these vehicles? It seems to be an entire perversion of the question to claim that it should be determined as though the words the "license fee" had read "car license fees." The common council did not so restrict their language. They evidently intended that these cars should pay a license fee such as vehicles engaged in a similar work were compelled to pay, and that these cars should receive licenses as well as they. There is no mention of car license fees in the resolution, and the common council could not have had such license fees in mind, because none existed; but, as has already been said, a license fee was provided for in respect to vehicles engaged in the same work, and it is apparent that the license fee referred to was this license fee, and none other. That this is the true conclusion in respect to the intention of the common council is singularly strongly emphasized by the wording of the resolution in respect to the Ninth-Avenue road, which passed one of the branches of the

common council only two days after the passage of the resolution in question. In that resolution it is provided "that the said cars shall be licensed by the mayor, and the grantees shall pay the annual license fee of twenty dollars per car for such license." Not an annual license fee, but the license fee; referring evidently to some fee regulated by existing law. The license fee of $20 referred to here was undoubtedly that paid by accommodation coaches and stage-coaches, and the license fee referred to in the resolution in question was the same. The fact that prior to this time resolutions had been adopted authorizing the operation of street railroads, and no license fee had been required for the cars, affords no answer to the conclusion arrived at, but rather emphasizes the fact that a change in policy was being inaugurated by the common council; that although street cars had theretofore been an experiment of doubtful success, their availability had been demonstated, and applications for grants were multiplying, and it was determined to exact the same revenue for the city as had for a long time been exacted from other vehicles engaged in the same business. In the view which has been taken of this subject, it is immaterial whether street cars are to be considered coaches or not. The license fee referred was that paid by accommodation coaches. Even if it was necessary to put this decision upon the same ground taken by the court below, the common use of the words "car" and "coach," in reference to railroad passenger cars, would seem to indicate that there is no such generic difference between the word "car" and the word "coach," as applied to vehicles devoted to the carriage of passengers, as to make it impossible to use the words interchangeably.

The judgment and order appealed from should be affirmed.

BARTLETT, J., concurred.

MACOMBER, J., (*dissenting.*) *Action No.* 1. It is true, as the learned justice says in his opinion, that it was the intention of the plaintiffs and defendant, at the time of making the agreement that there should be paid, for the use of the streets, some compensation or license fee; but it by no means follows that a mere intention on the part of both contracting parties, the one to demand and the other to agree to pay some license fee or compensation for the use of the streets, that resort may be had to an ordinance which manifestly in its inception was not intended to be applicable to those vehicles which are run upon fixed iron tracks, and known always as horse cars. Indeed, the plaintiffs never presented this claim until nearly 23 years after the passage of the ordinance, and not until they had been defeated in an action to recover the license fee of $50 a car from the defendant, which had been imposed by virtue of an ordinance passed subsequently to the agreement mentioned above. See *Mayor, etc.,* v. *Railroad Co.,* 33 N. Y. 42. The true construction of the agreement and ordinance is that the defendant was required to pay a license fee only to the extent as was then provided for railroad cars. It is not competent for the plaintiffs, after ascertaining that they as well as the defendant had been laboring under a mistake of fact, so to enlarge the terms of the agreement as to make the ordinance in reference to stage-coaches applicable. Why should that ordinance be hit upon as imposing the license fee contemplated by the parties rather than a license fee for the running of hackney coaches? The explanation of the learned judge at the trial is that the stage-coaches ran upon routes very nearly the same as the route of the street-car company, and were actually replaced by the use of the street cars themselves. This seems to us to be an unsatisfactory reason, for any intention to resort to other ordinances than some one relating to street cars is not discoverable in the terms of the resolution or the agreement. At the time of the passage of the resolution, the term "car" had a well-defined, unmistakable, signification. It could never be confounded with stages or an accommodation coach. The stages ran from

particular stands, used all portions of the streets, and landed their passengers at the curbstone on either side; in the winter time they were often replaced by sleighs. Furthermore, there was imposed upon the street-car company the duty of repairing the pavement of the streets for a certain distance on each side of the track, and many other obligations were imposed which did not exist in the case of the stages or accommodation coaches, so called. There is not, so far as we are able to discover, anything in the attending circumstances to enable us to have resort, in order to maintain the action, to the almost obsolete ordinance relating to stages. The parties acted upon a mutual mistake in making the agreement in question. Some stress is laid, in the brief of one of the counsel for the appellants, upon the fact that the defendant never was licensed by virtue of the provisions of the title relating to stages and accommodation coaches; but no greater significance could be given to this circumstance than has already been pointed out, for it is alleged, and not denied, that the plaintiff, at least from the time this claim was made, was willing and ready at all times to grant a license to the defendant. The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event of the action.

*Action No. 2.* This case differs from action No. 1 only in this circumstance, namely, that the cars which it is claimed should pay the license fee, known as the "Grand Central Line," which runs along Third avenue, from the City Hall as far north as Thirty-sixth street, where it branches off for a block to Lexington avenue, and thence runs up and down that avenue to Forty-second street, and thence again westwardly up and down that street to and from the Grand Central depot. The mere circumstance that the cars ran over the main line only as far north as Thirty-sixth street, and not the full length of the railway, is not of any significance in determining the defendant's liability to the plaintiffs. If the ordinance of 1839, which was the subject-matter of the opinion in "Action No. 1," was applicable to any of the cars of the defendant, it would be equally applicable to these. But, as we have already held, there was no ordinance in existence at the time of the agreement between the parties imposing a license fee upon cars run over the defendant's tracks. It follows that the judgment should be reversed, and a new trial granted, with costs to the defendant to abide the event of the action.