PEOPLE ex rel. FLYNN v. WOODS, Police Com'r.  (No. 7724.)

(Supreme Court, Appellate Division, First Department.  November 5, 1915.)

1. MUNICIPAL CORPORATIONS ⟨©⟩186—POLICEMEN—SUSPENSION—COMPENSATION.

A policeman was suspended without pay pending a hearing upon charges against him, and, having been indicted by the grand jury, requested the police commissioner to postpone the trial on the charges until the termination of the proceedings under the indictment, stating that the trial in the police department would seriously conflict with his interests in the criminal prosecution. The police commissoner adjourned the tral to await the outcome of the criminal proceedings, but before the criminal charge had been ·disposed of the policeman died. *Held*, that Greater New York Charter (Laws 1901, c. 466) § 292, providing that the police commissioner shall have power to suspend without pay pending the trial of charges any member of the police force, and that if any member shall not be convicted of the charges so preferred he shall be entitled to full payment from the date of suspension, did not apply, as, though the policeman had not been convicted, the statute was not intended to apply where an accused officer, by his own act and for his own advantage, has created a condition under which he can never be convicted or acquitted of the charges against him.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 510–517; Dec. Dig. ⟨©⟩186.]

2. STATUTES ⟨©⟩183—CONSTRUCTION—FOLLOWING INTENT.

In construing statutes the intent of the Legislature and the purpose sought to be achieved are to be sought out, and when these can be clearly ascertained the statute is to be so read as to carry out the intent and effectuate the purpose, even if in so doing the strict letter of the statute must be departed from.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 261; Dec. Dig. ⟨©⟩183.]

Appeal from Special Term, New York County.

Mandamus by the People, on the relation of Harry E. Flynn, as administrator of William H. Flynn, deceased, against Arthur H. Woods, as Police Commissioner of the City of New York. From an order directing the issue of a peremptory writ of mandamus, defendant appeals. Reversed, and motion denied.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

⟨©⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John F. O'Brien, of New York City, for appellant.
Charles Caldwell, of New York City, for respondent.

SCOTT, J.. The application for a writ of mandamus is made by the administrator of William J. Flynn, deceased, formerly a patrolman in the police department of the city of New York. The requirement of the writ is that defendant, as commissioner of police of said city, certify to the comptroller a pay roll for the salary of said Flynn from March 12, 1914, on which day he was suspended pending trial upon charges, to April 20, 1915, the day on which he died.

[1] The appeal presents for consideration and construction section 292 of the Greater New York Charter, which provides as follows:

"He [the police commissioner] shall have power to suspend without pay, pending the trial of charges, any member of the police force. If any member of the police force so suspended shall *not be convicted by the police commissioner* of the charges so preferred, he shall be entitled to full pay from the date of suspension, notwithstanding such charges and suspension."

The circumstances under which this question has arisen are peculiar. On March 12, 1914, charges were preferred against Flynn by the commissioner of police that he had, while off duty and in civilian attire, shot a citizen, and had also arrested a citizen upon a false charge. On the same day he was suspended without pay pending a hearing upon the charges. This hearing was originally set for March 19, 1914, but was adjourned until March 26, 1914, and again until April 2, 1914. In the meantime Flynn was indicted by the grand jury of Bronx county for the felony of an assault in the first degree. Thereupon his attorney formally, by letter, requested of the police commissioner that Flynn's trial on the charges preferred by said commissioner should be postponed until the termination of the proceedings under the indictment, stating that the trial of Flynn on the charges against him in the police department would seriously conflict with his interests in the criminal prosecution.

The police commissioner acceded to this request and adjourned the trial upon the charges to await the outcome of the criminal proceedings. Before the criminal charge had been disposed of Flynn died. The claim of the relator is that under the strict letter of the statute he is entitled to collect the salary withheld from his intestate during suspension, because he was never convicted by the police commissioner of the charges preferred against him, and now never can be.

[2] We do not consider that the statute above quoted should under the circumstances of this case be so literally construed. It is a well-established rule of statutory construction that in every case the intent of the Legislature and the purpose sought to be achieved by the statute are to be sought out, and that, when those can be clearly ascertained, the statute is to be so read as to carry out the intent and to effectuate the purpose, even if in so doing the strict letter of the statute must be departed from. This rule has been often reiterated:

"It is also a rule sometimes laid down by text-writers that whenever it happens that the sense of the law, how clear soever it may appear in the words, would lead to false consequences and unjust decisions, the palpable injustice which would follow from this literal sense compels an effort to

discover some kind of interpretation, not what the law literally says, but what it means." People ex rel. Twenty-Third Street Railway Company v. Commissioners of Taxes, 95 N. Y. 554, at page 559.

"In the interpretation of statutes, the great principle which is to control is the intention of the Legislature in passing the same, which intention is to be ascertained from the cause a necessity of making the statute as well as other circumstances. A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter." People ex rel. Wood v. Lacombe, 99 N. Y. 43, at page 49, 1 N. E. 599, at page 600.

"All the provisions of a statute must be consulted, so as to ascertain the legislative intent, and whatever is necessarily implied in the statute is just as much a part thereof as if written therein." People ex rel. Huntington et al. v. Crennan, 141 N. Y. 239, at page 244, 36 N. E. 187, at page 188.

"The intent of the Legislature is the object of all construction, and inconsistencies in the statutes are to be harmonized, even though words be disregarded and their literal or usual meaning be ignored, if thereby the intent can be arrived at." People ex rel. Gress v. Hilliard, 85 App. Div. 507, at page 511, 83 N. Y. Supp. 204, at page 206.

It is perfectly apparent that the statute referred to was adopted solely for the benefit of members of the police force who might be suspended under charges. Its purpose was to protect such persons against the possible injustice of being indefinitely suspended without pay, and without having been afforded an opportunity of an acquittal, which would be in effect a determination that the accused person should not have been suspended, and should not have been deprived of pay during such suspension. It was a measure for the protection of subordinate members of the police department against possible injustice at the hands of the commissioner.

In the present case the trial was postponed solely at the request of the accused, and because of his apprehension that the result of such a trial might work to his injury in the much more serious criminal prosecution. The acquiescence of the police commissioner was based wholly upon the request thus made by the accused. Thus the test which, under the statute, was to determine whether or not the suspended officer was to be paid his salary was made impossible of application, by this officer's own act in requesting a postponement of his trial, and by his death before the event occurred when, as he considered, he could without serious prejudice go to trial before the police commissioner.

The statute was never intended to apply to a case in which an accused officer has by his own act, and for his own advantage, created a condition under which he could never be convicted or acquitted of the charges against him.

The order appealed from must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.