**In re ST. MARK'S HOSPITAL OF NEW YORK CITY.**

**M. P. MOLLER, Inc., v. IRVING TRUST CO.**

No. 447.

Circuit Court of Appeals, Second Circuit.
June 27, 1932.

St. Mark's Hospital of the City of New York was adjudicated a bankrupt on May 16, 1931, on a voluntary petition in bankruptcy filed that day in the District Court for the Southern District of New York. A receiver was appointed May 19th, and the appellant, Irving Trust Company, was duly elected and qualified as trustee the following August.

On July 24, 1929, the bankrupt and M. P. Moller, Inc., of Hagerstown, Md., a manufacturer of pipe organs, executed a written agreement by the terms of which the bankrupt purchased and Moller, Inc., sold, a pipe organ to be installed in a building of the bankrupt then being erected in New York City. The purchase price was $11,500, to be paid by the bankrupt in three installments— one third upon satisfactory completion and acceptance; one-third three months after the installation date; and the remainder six months after completion. Payment as so provided has not been made. The contract also contained the following clause:

"9. It is mutually agreed that the title and ownership of the organ shall remain with party of the first part until the contract price, before mentioned, has been fully paid, after which the instrument shall become the property of the party of the second part; also that all verbal agreements and undertakings are merged in this contract, and the specifications and details of construction attached hereto."

Some changes were made in the plans and construction of the building the better to accommodate the organ, and it was satisfactorily installed as agreed before May 1, 1930. To install it required an assembling of its parts after they had been taken into the building. It was put together and fastened to the building in such a way that it could, with careful work requiring a few days, be taken out without material injury to it or to the building.

March 30, 1931, H. Gams & Sons, a creditor of the bankrupt, obtained a judgment against it in the Supreme Court, county of New York, for $5,237.27. On March 31, 1931, execution was issued on this judgment, and a levy thereunder was made by the sheriff of New York County upon the property of the bankrupt, and, among other property covered by the levy, was one organ which was plainly the Moller organ. The sheriff adver-

tised this property for sale to be held on April 13, 1931, and later adjourned the sale to May 19, 1931. On May 18th the sheriff was enjoined, and no sale under the execution and levy ever was had. The judgment creditor signed a stipulation to vacate the judgment as one obtained within four months of the filing of the petition in bankruptcy. No affirmative action to preserve the lien for the benefit of the estate has ever been taken.

'M. P. Moller, Inc., filed its petition to reclaim the organ. The referee who heard the matter dismissed the petition. On review in the District Court, this order was reversed, and from that decision this appeal was taken.

The agreement under which the bankrupt purchased the organ of the claimant was filed for record on April 13, 1931. Even then it was not filed as required by section 67 of the Personal Property Law of New York (Consol. Laws, c. 41), but was recorded in the proper place so as to be effective under section 65 of that law from the date of filing. Section 65 applies to conditional sale contracts of goods generally. Section 67 covers what is to be affixed to realty.

Olvany, Eisner & Donnelly, of New York City (Mark Eisner and Samuel Michelman, both of New York City, of counsel), for appellant Irving Trust Co.

Cotton, Franklin, Wright & Gordon, of New York City (Paxton Blair, Wallace P. Zachry, and Henry H. Dinneen, all of New York City, of counsel), for claimant-appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above.)

As we are reminded in Madfes v. Beverly Development Corporation, 251 N. Y. 12, 166 N. E. 787 (see, also, Cohen v. 1165 Fulton Ave. Corporation, 251 N. Y. 24, 166 N. E. 792), there are chattels which have such a distinctly movable character that they continue to be personal property after they have been attached to the realty even when no agreement between their owner and the real estate owner is to that effect. In the Madfes Case, it was held that gas ranges installed in an apartment house and connected to the gas supply pipe by a readily moveable coupling was of this class. It was also pointed out that a second kind of personalty which is represented by the materials out of which the building proper is constructed do become part of the realty re-

gardless of any agreement that they shall not. See, also, Davis v. Bliss, 187 N. Y. 77, 79 N. E. 851, 10 L. R. A. (N. S.) 458. In addition there is the third great class of chattels which, when attached to real estate, sometimes do and sometimes do not become a part of the realty. Their status depends upon the intent with which they were attached, when the chattels and the real estate have a common owner, and the manner of their annexation with the effect removal will have upon them or upon the realty is often the determinative factor as to this intent. When such chattels are owned by one person and the real estate by another the test is the agreement, if any, between the respective owners. When this is not plain, the manner of the attachment and the effect of removal on the physical condition of the property are often the decisive factors. This last element has been made the basis of section 67 of the Personal Property Law of New York (Consol. Laws, c. 41). It makes void any reservation, except as to persons who have expressly assented to such reservation, of property in goods after they are so affixed to realty either at the time of, or after, a conditional sale that they cannot be severed in whole or in part without material injury to the real estate. It also provides that, where goods are affixed to the realty so as to be severable without material injury to it, reservation of property in them shall be void against subsequent purchasers of the realty for value and without notice unless such agreement for the reservation as the statute requires is filed before the purchase in the office where a deed of the realty would have to be recorded. It further provides that such a reservation shall be void against the owner of the real estate unless filed in such office before the goods are affixed to the realty.

A pipe organ cannot be placed within the first class of attached moveables which is well enough represented by the gas ranges of Madfes v. Beverly Development Corporation, supra. That such an organ may be installed so that it undergoes no change in its status as personal property and does not become a fixture is shown by Washington Mortgage Corporation v. Forways, 235 App. Div. 642, 255 N. Y. S. 110, although the opinion in that case does not do more than establish that such a result is possible. When an organ remains unaffected by annexation to realty, as held in the last case cited, of course compliance with section 65 of the Personal Property Law of New York (Consol. Laws, c. 41), which deals with conditional sales of goods,

without reference to their annexation to real estate, would be sufficient. But a pipe organ which has been built into a building that has been constructed so as to provide suitable space expressly for it cannot be readily moved about at will, and cannot be so easily detached and removed as to put it into the class of permanent personalty. Neither did this organ become a part of the building, for it can be removed without material injury to anything, and the building itself would still be intact if the organ were taken out. It does have every attribute of personal property affixed to realty in such a way as to bring it within the provisions of section 67, and so the rights of the parties must be determined under that law. Kohler Co., Inc., v. Brasun, 249 N. Y. 227, 164 N. E. 31. Failure to file the conditional sale contract in accordance therewith made it void only as against subsequent purchasers for value without notice and as against the owner of the realty. In New York, before section 67 took effect in 1922, a conditional sale contract was valid inter partes whether recorded or not. Creamery Package Manufacturing Co. v. Horton, 178 App. Div. 467, 165 N. Y. S. 257. And as will later appear we do not think section 67 changed the law in this respect.

■ The trustee in bankruptcy is vested with all the rights of a judgment creditor. Though he is not limited since the amendment of 1910 to holding property in the right of the bankrupt alone, he has not been given the rights of an innocent purchaser for value. Matter of Remson Mfg. Co. (C. C. A.) 232 F. 594; Matter of Seward Dredging Co. (C. C. A.) 242 F. 225. As he cannot claim as an innocent purchaser for value, the requirement of the statute that the contract be recorded on penalty of otherwise becoming void as against such a purchaser without actual notice does not apply here.

■ The trustee does unquestionably hold in the right of the bankrupt, and this bankrupt was the owner of the realty to which the organ was attached. If the statute be construed literally, it would include this owner and make the conditional sale contract void as to this trustee. Such a construction, however, puts an owner of real estate who, on a conditional sale contract, buys personal property to be attached to his realty, in a position to repudiate his own express agreement provided he does affix the purchased property to his realty before the seller records the contract. An intent to make the validity of a contract as to one of the parties to it de-

pendent upon its being filed before a certain time in a public registry of deeds should not be lightly ascribed to the Legislature. Especially is this so when it is seen that subsequent purchasers of the realty for value take subject to the terms of the conditional sale contract, though not filed, if they have notice of it. An owner of real estate who buys personal property to be attached to it not only needs no notice of the terms on which he has bought the property, but should be required to take and hold that property just as he has agreed regardless of any filing for record. It requires no more than to hold the word "owner" to a sensible meaning within its context to give this statute a construction which will conform to the basic principle of justice that, when a person is fairly induced to make an agreement not forbidden by law, he is bound by its terms. Such a construction gives, as it should, effect to the spirit and purpose of the law, People ex rel. Wood v. Lacombe, 99 N. Y. 43, 1 N. E. 599, and also to its language. The whole statute looks toward the protection of those who have no notice that personal property attached to real estate was purchased conditionally. To harmonize the clause relating to the rights of an owner of real estate with the statute as a whole, the word "owner" is held to mean an owner of realty who is not a party to the conditional sale contract under which the personal property was purchased. That the Legislature so understood may be gathered from the fact that by an amendment which took effect January 1, 1931, it expressly limited the owner to one who is not the buyer of the goods. We think this amendment was merely declaratory of the original intent that the owner who could take advantage of a failure to record the conditional sale contract was not the owner who had made the conditional sale contract himself, but an owner to whose real estate chattels were affixed by another who had purchased them under a contract of conditional sale.

■■ As section 67 does not make such a contract as this void, if not filed, except as to those named in the statute, the contract is valid, though not filed, as between the parties to this action. Whatever rights Gams & Sons may have acquired which the trustee could have had preserved for the benefit of the estate are unimportant since that creditor, in any event, could take only such interest in the organ as its debtor owned. Matter of Remson Mfg. Co., supra. Consequently, whether or not the trustee can now hold through Gams & Sons is immaterial.

Order affirmed.