In the Matter of WILFRED D. MURTHA, Petitioner, against GEORGE P. MONAGHAN, as Commissioner of the Harness Racing Commission of the State of New York, Respondent.

Supreme Court, Special Term, New York County, August 11, 1955.

*Max M. Bernstein* and *Meier Steinbrink* for petitioner.

*Jacob K. Javits, Attorney-General (Daniel M. Cohen* of counsel), for respondent.

MARKOWITZ, J. This is an article 78 proceeding whereby petitioner seeks a review of respondent's refusal to accept petitioner's application for a license as a mutuel clerk at Roosevelt Raceway. The application was rejected by the respondent upon the determination that section 63 of the Pari-Mutuel Revenue Law (L. 1940, ch. 254, as amd.) as added by chapters 514 and 515 of the Laws of 1954 was applicable and required such rejection. Petitioner further seeks the judicial direction of this court to the respondent to accept said application and to issue the requested license. It appears from the record before me that petitioner is a discharged veteran, has been and is now

regularly employed as a school teacher in Nassau County since 1949 (except for the period of his service in the United States Navy). He is a physical education teacher and his hours of service are in the morning and early afternoons. His salary is in excess of $5,000 per annum. Roosevelt Raceway is a track operated during the evening hours in Nassau County, under a license from the respondent for harness racing and conducts mutuel betting operations in connection therewith sanctioned by law. The petitioner has been employed at said Roosevelt Raceway as a mutuel clerk during the years from 1947 to 1953, except during such period of time when he was serving in the Navy. As a mutuel clerk his duties were to sell tickets to the public at the track and to cash winning tickets. Such duties were entirely ministerial and menial requiring no special skill or training nor requiring the performance of any executive, directional or discretionary acts. It appears that public employees in the past have constituted substantially less than 10% of all of the mutuel clerks employed at the track. Prior to May 1, 1954, no license for such employment was required. Petitioner has never held any license from the respondent commission although it appears that except for the statutory prohibition against the employment of public employees, petitioner in all respects was and is a person qualified to hold a license as a mutuel clerk prior to April 6, 1954. It appears and is not contradicted that his duties as a mutuel clerk in no way interfere with nor conflict with or in any wise affect the performance of petitioner's employment and duties as a teacher.

By chapter 254 of the Laws of 1940, harness racing and mutuel betting in connection therewith was authorized. It was not until the year 1954 when, in the light of the Moreland Act Commission exposures involving the operation of the race tracks and the ownership of their proprietary stock, drastic regulations were adopted by the Legislature in an attempt to cure the situation. Subdivision 1 of section 63 of the Pari-Mutuel Revenue Law was enacted which provided, so far as the proceedings herein are concerned, that public officers and public employees who earned more than $5,000 per year and party officers were barred from holding any license from the State Racing Commission or the State Harness Racing Commission (subd. 1, par. [a]; subd. 3, pars. [a], [b]), and also were barred from holding any office or employment with any of certain corporations or associations connected with pari-mutuel racing (subd. 1, par. [c]). In view of the foregoing petitioner did not apply for a license from the respondent commission in 1954.

By this statute, the right of public employees to perform minor menial work at a harness track, such as performed by petitioner, was severely circumscribed and, in the case of a public employee earning more than $5,000 per year, entirely prohibited through a denial of a license required to permit the hiring of a public employee by the operator of the track. It is interesting and significant to note that in all of the disclosures, not a single derogatory word was contained in the Moreland Act Commission's report nor a single improper act uncovered involving a public employee serving as a mutuel clerk.

Subsequently, by the adoption of subdivision 6 of section 63 (L. 1954, ch. 515), the severity of the statute was immediately softened. That provision reads as follows: " 6. The provisions of paragraph (c) of subdivision one of this section shall not apply to a public employee of a political subdivision (other than a police officer or paid employee of a police department, sheriff's office, district attorney's office or other law enforcement agency) whose compensation is less than five thousand dollars per annum if the local legislative body or other governing board or body of the political subdivision authorizes such employment by ordinance, resolution or local law."

In 1955, by chapter 815, subdivision 7 was added to said section 63 which reads as follows: " *The provisions of paragraph* (a) of subdivision one of this section shall not bar a public officer, public employee or party officer from holding any license issued by the state racing commission or the state harness racing commission if he was qualified to hold such a license on or prior to April sixth, nineteen hundred fifty-four ".

The effect therefore, of the addition of this subdivision 7, was to repeal the prohibition against the granting of a license to a public officer, public employee or party officer. Respondent contends that since subdivision (c) was not expressly repealed, a public employee earning more than $5,000 per year is still barred from employment at a harness track and since a license would be meaningless, none should issue.

My study of the statutes involved and the history of the legislation leads me to the ultimate conclusion that petitioner has a clear right to the issuance of the license requested and that the position taken by respondent is contrary to the intent and purposes of the controlling statutes aforestated. There can be no dispute that petitioner is a person fully qualified to be licensed as a mutuel clerk prior to April 6, 1954. He had served in that capacity from 1947 to 1953. When section 63

was enacted in 1954, petitioner and the small group of other public employees similarly situated did not apply for a license for employment as a mutuel clerk because the statute prohibited such public employees from obtaining a license and prohibited them (subd. 1, par. [c]) from accepting employment from the association. Subdivision 2 of section 63 aforestated provided that the acceptance of employment without a license at a race track licensed by the respondent commission constituted a forfeiture of the public employment. However, the subsequent enactment of subdivision 7 (L. 1955, ch. 815) entirely changed the situation because it specifically provided that if a person were qualified prior to April 6, 1954, to hold a license, he was no longer barred because he was a public employee. I am therefore persuaded and of the opinion that at the present time no statutory prohibition exists against the granting of a license to petitioner merely because he is a " public employee ". I hold as untenable and without logical force or merit respondent's contention that the enactment of said subdivision 7 did not remove the prohibition contained in paragraph (c).

It appears that the obvious intent of the Legislature, in removing the statutory prohibition against the issuance of a license to public employees, was to permit them to obtain such license and that the persons obtaining such license could naturally use them. While it may be argued that the intent of the amendment was to permit the issuance of a license to a public employee, public officer or party officer for the purpose of doing something other than that contained in paragraphs (b), (c) and (d) of subdivision 1, it nevertheless is apparent that there is not one single activity involved in the operation of a race track which is not within the condemnation of said paragraphs (b), (c) and (d). Certainly one who races or trains horses, conducts an occupation, trade or business at the race track in order to seek income in the form of a purse or a prize for a successful effort. Whatever· the activity may be, if it is conducted at the race track with the consent, permission or co-operation of the association, it must come within the prohibition contained in the afore-mentioned paragraphs (b), (c) and (d).

After a thorough consideration of the statutes involved in this application and of the background for their enactment, it is clear that the approach to the application of these statutes must be a reasonable one; a reasonable interpretation must be made in order that the law be fairly construed to give force

to the entire act and not through an injustice or inequality in its application. This expression finds support in such cases as *People ex rel. Washburn* v. *French* (52 Hun 464), *Holy Trinity Church* v. *United States* (143 U. S. 457), and *People ex rel. Wood* v. *Lacombe* (99 N. Y. 43). Manifestly, we must look to the act as a whole and to the subject with which it deals for the reason and spirit of the enactment and thereby determine the true legislative intent and purpose. I am of the ultimate conclusion that it was the intent and purpose of the Legislature in the enactment of subdivision 7 to lift entirely the restrictive provisions imposed by section 63 upon a public employee and those similarly situated; otherwise the Legislature could have added to the language of subdivision 7 these categories to which a prohibition against the issuance of a license continued. For example, the Legislature could have added that no license could be issued to an owner, driver, a mutuel clerk, a steward or other track official who was a public employee. Having categorically withdrawn the prohibition against the issuance of a license to a public officer, a public employee or a party officer without restraint or limitation, the conclusion is inescapable, in my opinion, that the Legislature intended to withdraw the restriction against the issuance of a license to such person. I am further influenced in my determination that the numerous arbitrary exclusions were not intended by the Legislature because there appears to be no logical reason to exclude all State employees, if city, county and local employees earning less than $5,000 per annum are exempt from such exclusion. If the reasoning behind the present laws is sound, as urged by respondent, then it becomes somewhat absurd when we find that there is no limitation whatsoever imposed upon Federal employees or public service employees of neighboring States. As pointed out in the affidavit of Mr. Fosner, manager of the office of personnel of the Roosevelt Raceway, who appears herein as *amicus curiæ,* approximately fifty public service employees who have had creditable employment records at Roosevelt Raceway prior to 1954 have been prohibited from returning to their supplementary seasonal part-time employment because of the severe restrictions imposed upon them by the afore-mentioned statutes. It is also pointed out that public service employees previously employed by various concessionaires and contractors are not included in the foregoing estimate. Among the public service employees excluded by the law, as interpreted by respondent, from returning to their

positions at the Roosevelt Track are school teachers, clerks, court attendants of the Supreme and Surrogates' Courts, employees of the fire department, board of education, Labor Department, Motor Vehicle Bureau, etc., as well as all State employees and employees of local subdivisions earning more than $5,000 per annum. It seems apparent that a curtailment and barring of this type of personnel was not intended in the enactment of the laws herein discussed. It is obvious that the continuation of this type of personnel in the employment of the tracks is neither harmful nor detrimental to racing. As hereinbefore pointed out, no breath of scandal has been mentioned or attributed to any of this type of personnel employed at the race track.

For all of the foregoing reasons, I find and conclude that the determination of the respondent was arbitrary and capricious; that the respondent misinterpreted the effect of the amendment enacted by chapter 815 of the Laws of 1955, and that petitioner, being a qualified person within the provisions of section 63 of the Pari-Mutuel Revenue Law, is entitled to the issuance of the license applied for, and that the respondent is hereby directed to issue such license to the petitioner.

In view of this disposition, I do not feel that further consideration of the argument raised in respect of the constitutionality of the statutes in question need be considered, and that question is therefore not determined here.

The cross motion of respondent to dismiss the petition, on the ground that the application is premature and petitioner has failed to exhaust his remedies before the respondent commissioner, is denied. It appears that the respondent commissioner here did not refuse to grant petitioner a license, but that he refused to even accept petitioner's application. The present proceeding seeks to compel the commissioner to accept the application and for an order directing him to issue the license as a ministerial act. Since petitioner is qualified under the law and entitled to a license as a mutuel clerk, there is no discretionary power in the respondent to refuse him the license upon the grounds stated by the respondent commissioner in its interpretation of the law. There is no factual dispute here and the sole question involved is one as to the interpretation of the applicable statutes.

Settle order on or before August 11, 1955, on one day's notice.