THE PEOPLE ex rel. JOSEPH McCANN, Respondents, *v.* JAMES KILBOURN, Appellant.

The provision of the amended charter of the city of Albany, of 1870 (title 3, § 10, chap. 77, Laws of 1870), providing that the mayor, with the consent and approval of the common council, "shall *biennially* appoint" certain officers named, "who shall continue in office until their successors have been appointed and duly qualified," relates to the time when the appointments shall be made, and was not intended to fix the term of office of the appointees without regard to the time of appointment.

It was the legislative intent, as indicated by said charter, that the municipal government should be under the control of the officers which are required to be elected for the period of two years; and under said provision it is the duty of each newly-elected mayor, immediately upon his accession to the office, to make the appointments designated, without regard to the question whether the then incumbents have served for more or less than two years.

Accordingly, *held*, where a street commissioner was appointed just prior to the expiration of the term of office of the then mayor, and a new appointment was made by his successor, that the latter appointee was entitled to the office.

(Argued February 8, 1877; decided February 20, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department in favor of relator, entered upon a case submitted under section 372 of the Code.

The facts submitted were in substance as follows:

On the 6th day of July, 1874, under the amended charter

of the city of Albany (chap. 77, Laws of 1870), the mayor elected at the charter election of that year, and who took office on the first Tuesday of May for two years, nominated John N. Parker to the office of street commissioner, but the common council refused to consent or approve, and the then incumbent held over. On the 17th day of April, 1876, the said mayor, with the consent and approval of the common council, appointed defendant to said office, and on the twenty-fourth again appointed him with the same consent and approval. Defendant filed the requisite bond and entered upon the discharge of the duties of the office. A new mayor was elected at the charter election in April, 1876, who entered upon the office on the first Tuesday of May in that year. On the 23d day of October, 1876, said mayor, with the approval and consent of the common council, appointed the relator to the office of street commissioner, who filed his bond and demanded the books and papers of the office, but defendant refused to deliver, claiming to be entitled to hold the office for two years from the time of his appointment.

*Samuel Hand* for the appellant. Defendant was entitled to hold the office of street commissioner for two years from the date of his appointment, irrespective of when his term commenced. (Laws 1870, chap. 77, title 3, § 10; *People* v. *Green*, 2 Wend., 266, 273, 277; *People* v. *Contant*, 11 id., 133, 511; *Cordell* v. *Frezell*, 1 Nev., 130; Const. 1777, art. 26; *Marshall* v. *Harwood*, 5 Md., 423.)

*S. O. Shepard* and *G. L. Stedman* for the respondents. The duration of the office not having been limited by law, defendant held only during the pleasure of the power making the appointment. (1 R. S. [6th ed.], 415, tit. 6, art. 1, § 8; Const. 1875, art. 10, § 3.)

*Per Curiam.* This case involves the right of the relator to hold and exercise the functions of the office of street commissioner of the city of Albany. The validity of the

relator's title to the office, depends upon the construction to be placed upon certain provisions of the amended charter of the city of Albany.  The charter provides that there shall be chosen by the electors on the second Tuesday of April, in the year 1870, at the charter election and on the same day every two years thereafter, the aldermen for said city who are to enter upon the duties of that office, upon the first Tuesday of May, succeeding their election, and unless removed for cause, to hold office until their places are supplied by the election of new members.  (Chap. 77, Sess. Laws of 1870, title 3, §§ 3, 4, 5.)  The second section, of the fourth title, provides that the mayor shall be elected at the same time and hold his office for the same period.  These provisions indicate an intention of the legislature that the municipal government shall be under the control of the officers elected for the period of two years which is named.

The tenth section of the third title of the charter declares that "the mayor, with the consent and approval of the common council of said city, shall biennially appoint" certain ministerial officers, who are named, including "one street commissioner," and that "such officers shall continue in office until their successors have been appointed and duly qualified." The right of the relator to the office in question depends upon the construction to be placed upon this provision.

On the 17th of April, 1876, the mayor then in office, and again on the twenty-fourth of April, appointed the appellant as street commissioner, both of which appointments were confirmed by the common council.  A new mayor was elected at the charter election in the place of the then incumbent, and at the same time new members of the common council whose term of office commenced on the first Tuesday of May following, and the relator was appointed and confirmed on the twenty-third of October, thereafter.  The controversy is brought down to the narrow point and hinges upon the single question whether the word "biennially," as used in the section cited, relates to and means the time when the appointment is made, or whether it prescribes the term of office of

the appointee without regard to the time of appointment. The intention of the legislature is to be considered, and having in view the time when the city offices were to be elected under the charter and the time when the appointment was to be made, it would indicate that when these officers had been chosen, inaugurated and prepared to discharge their official duties as the organized government of the city the mayor was to perform the duty imposed by the tenth section of the act by making an appointment to the common council, and that body to pass upon his action. It is true that this might also be done if the appointment was for the term of two years, but it is not unreasonable to suppose that if such had been the intention the law would have provided specially to this effect. An omission in a legislative enactment is sometimes as significant as the positive requirements of the act, and is to be regarded as an indication that nothing more was intended than appears upon the plain reading of the statute. Looking at the language employed in this light it must be read as if the appointment was to be made at, after, or in immediate connection with, the commencement of the term of the new officers who have been selected at the prior charter election, without any regard whatever to the term of the officer or the time when he may have been previously appointed. The section cited says the mayor "shall biennially appoint," and it means that he must appoint at all hazards, no matter whether the incumbent in office has served two years or less than that period. The word "biennially" evidently and beyond any question has reference to the time of the appointment, and in connection with the circumstances under which it is used it signifies that the mayor then and there, immediately subsequent to his accession to the office, shall make the appointment. If it was so designed to refer to a term of two years it would have so said in clear and unmistakable language. In the absence of any such explicit declaration that the term of office shall be for two years the fair, reasonable and plain interpretation of the word "biennially" is that it relates to the period of time when the appointment shall be made.

This construction is also supported by the provision in section 7 of title 3 of the charter, to the effect that the common council shall "biennially" elect from its body a president and "biennially" appoint its clerk. It is apparent that this was intended to be done at the commencement of the term of office of the members of the common council as fixed by the charter; and if, perchance, for any reason such appointments were not or could not be made at the time or were delayed, or if any vacancy occurred, it cannot be claimed that the "biennial" appointments made at a later period would extend beyond the time for which such members of the common council were elected; and thus impose on their successors the officers selected after the term of the office of the president and the other members had expired.

It is insisted that the provision of subdivision 6 of section 8, title 4, of the charter, as amended by chapter 536 (Session Laws of 1871), which declares that the mayor shall fill by appointment any vacancy which may occur by death or resignation of any city officer, whether elected or appointed, leads to a contrary and a different result. We think that the section last cited can be construed in harmony with the provisions of the charter already considered. It does not in any way interfere directly with the idea kept in view throughout the charter, that the appointments must be made biennially, and the most that can be claimed for it is, that in case of a vacancy occurring, by death or resignation as provided, and in no other case, that a new appointment shall be made until the next charter election, and that then, at the beginning of the municipal year further action shall be taken by the appointing power. This might be at the commencement of a new term of the city officers when an appointment could properly be made "biennally," as the charter requires, or if not then, because another year must elapse by another appointment and until the "biennial" term commences. This construction would be in harmony and entirely consistent with the other provisions of the charter, and as the provision referred to was not a part of the original charter, but was subsequently

incorporated into it by amendment, it would be unreasonable to hold that it was designed to change the intention of the legislature, the entire purpose of the act, and thus, overthrow the structure upon which the original charter was framed in respect to the time when appointments were to be made.

The intention of the legislature and the general purpose of an act cannot be set aside by a single amendment of the law, even although its meaning is not entirely clear, and in the interpretation of statutes we must consider the main object in view, as well as the general scope of their leading provisions. It would not be in accordance with general and well-settled principles established by law to hold, that even if by inadvertence, carelessness or otherwise an amendment has been made to a statute which may, in a single instance, interfere with the enforcement of the purpose indicated in other provisions of an act of the legislature, the whole fabric, for that reason, must fall and fail to answer the ends designed, and that such amendment must control. It may also be observed in this connection, that the amendment in question, as in many other similar cases, is inartificially drawn without that accuracy and exactness which is very essential in framing statutes properly, and very probably, without a careful consideration of its effect on the various provisions of the charter which relate to the same subject.

The cases to which we have been referred by the appellant's counsel are fully considered in the opinion of Bockes, J., in the court below, in this court in the case of the *People ex rel. Lansing* v. *Tremain,* and as we concur with the views there expressed upon this subject further elaboration is not required in reference to the same. The opinion referred to fully discusses and determines all other material questions in the case not herein considered and renders it unnecessary to discuss them more at length. After a careful examination, it is quite manifest that the relator is entitled to the office in question and the judgment of the General Term should be affirmed.

All concur, Rapallo, J., concurring in result.

Judgment affirmed.