ARTHUR W. CLAYTON v. WILLIAM GREEN.

1. The act entitled "An act to reorganize boards of chosen freeholders in counties of the first class in this state," passed May 16th, 1894 (*Gen. Stat.*, p. 422), gives a term of two years to members of the boards of freeholders in counties of the first class, and provides that, on the first Monday in December next after their election and on the first Monday in December of each second succeeding year, they shall elect a director. *Held*, that, under this act, the term of office of director is for the period of two years.

2. The seventh section of the general act concerning boards of freeholders (*Gen. Stat.*, p. 410) applies to boards elected under the act of 1894 and confers on the board the power to remove a director for absence or refusal to act; and a freeholder elected as director cannot be removed for any other cause.

On rule to show cause. On information filed in the name of the attorney-general in *quo warranto* proceedings.

Argued at November Term, 1897, before MAGIE, CHIEF JUSTICE, and Justices DEPUE, GUMMERE and LUDLOW.

For the relator, *Leon Abbett* and *Flavel McGee.*

For the defendant, *Charles L. Corbin* and *Allan L. McDermott.*

The opinion of the court was delivered by

DEPUE, J.    This information was filed in the name of the attorney-general by Arthur W. Clayton, who claims the office of director of the board of chosen freeholders of Hudson county.

The information sets out that the board of chosen freeholders of the county of Hudson met on December 7th, 1896, for organization, and that at the said meeting the relator was duly elected director of the board and qualified as such, and is lawfully entitled to said office, and that William Green, who was also a member of the board of chosen freeholders, usurps and intrudes into and unlawfully executes the office

of director and presiding officer of said board of chosen free-holders.

The defendant, Green, by his plea, does not deny the election of Clayton as director at the organization of the board, but sets out that Clayton refused to act as director of the board of chosen freeholders of the county of Hudson, and that on the 30th day of December, 1896, the said board removed the relator from office and proceeded to elect him, the said Green, as director, and that he, the said Green, did thereupon assume the duties of said office, and from thence has been and is director of the board.

The issue was tried at the Hudson Circuit on July 6th, before Mr. Justice Lippincott and a struck jury. Testimony was taken on both sides, and at the conclusion of the case the judge directed a verdict in favor of the plaintiff, on which this rule to show cause was granted.

The facts are practically undisputed. The official minutes of the meeting of the board of freeholders of December 7th, 1896, which was the meeting at which the board was organized, show that when the clerk, who held over, called the board to order and declared that the first business in order was the election of director, a motion was adopted by the board that the board should go into an election for director; nominations were made, and the relator received a majority vote of all the members, and was duly declared director of the board.

At a special meeting of the board, on Wednesday, December 30th, 1896, a resolution was passed reciting that the relator, the director of the board, " has ever since election as such director, either refused altogether to discharge the duties or perform the functions of his office of director of this board, or has presided over the meetings of this board in such a manner as to violate the law and to endeavor to tyrannize over the members of this board, and endeavor to usurp and arrogate unto himself the rights and prerogatives of the majority of this board, and to deprive said majority of their rights and prerogatives; and has repeatedly defied the duly

expressed will of the majority of this board when said majority was in the lawful exercise of its clear and certain rights ; and has so misconducted himself in and abused his said office as to bring said office and endeavor to bring the board into disrepute, and to give the public a false impression of this board, and of the management of the affairs of this county by the board of chosen freeholders," with an enumeration of particulars. And it was thereupon " Resolved, That for the causes aforesaid the director be and he is hereby removed from the office or position of director of this board, and that the said office or position be and the same hereby is declared and made vacant." This resolution was adopted by a vote of the majority of the board, and by the same vote it was " ' Resolved, That William Green, a member of this board, be and he hereby is appointed and elected director of this board.' The clerk declared Freeholder Green elected as director and administered to him the oath of office. Director Green assumed the chair as presiding officer, and directed the roll to be called."

The evidence showed that at the meeting of the board of December 17th the relator as director decided that a resolution offered by one of the freeholders was out of order without the same being read to the board, and that on an appeal from the decision of the chair, duly seconded, the director refused to have the resolution read and refused to entertain the appeal from his decision that the resolution was out of order, and on a demand that the appeal be put to a vote of the board he refused to permit an appeal by the board from his decision. One of the freeholders then moved to adjourn, and a demand was made by several members of the board to call the ayes and nays on the motion to adjourn. This call the director ignored, refused to permit the roll to be called, put the question on the motion, took a *viva voce* vote and declared the motion adopted ; that he then vacated the chair and refused further to preside. Freeholder Riordan having assumed the chair, the roll was called and resulted in a vote of twenty-one to six, overruling the decision of the director,

whereupon Freeholder Riordan was elected director *pro tempore*, and the board proceeded with the transaction of business, and a resolution was adopted for the purpose of recording the vote of the members against the motion to adjourn which had been made while the relator was in the chair.   Substantially, this is a recital of the events of the meeting of December 17th, with respect to the conduct of the director and the board.   The transactions of the meeting of December 30th removing the relator and appointing Green director have already been stated.

The power of the board to remove its director and elect another member director is the issue in this case.   In the preamble to the resolution adopted on December 30th, among other charges made against the relator, is the publication of a pamphlet relating to the public institutions under the control of the board, in which the management of these institutions was severely condemned.   Under the issue made by the plea in this case, and under the statute which confers power upon the board of freeholders with respect to its directors, such extraneous matters have no relevancy to this case.

The board of chosen freeholders of the county of Hudson is organized under an act entitled "An act to reorganize the boards of chosen freeholders in counties of the first class in this state," passed May 16th, 1894.   *Gen. Stat., p.* 422.   The first section of that act provides for the mode in which the boards of chosen freeholders in counties of the first class shall be constituted, and provides that the terms of office of the members of the boards shall begin on the first Monday of December next after their election, and that they shall hold office for two years and until their successors are elected and qualified.   The office of this section is to create a board of freeholders in counties of the first class, whose life shall be for the term of two years.   Section 2 provides that the boards shall meet for organization on the first Monday in December succeeding the passage of the act and on the first Monday in December of each second succeeding year, and shall elect from their own number a director, who shall be the presiding

officer of said board and shall appoint the standing commit-
tees. The third section provides that the members of the
boards of chosen freeholders of such counties shall receive as
compensation for their services a salary of $500 per annum,
and the director shall receive the additional sum of $500 as
such director, to be paid in equal quarterly payments as the
same become due. By section 7 of the general act concerning
chosen freeholders the board is empowered to elect annually
one of their own number to preside at their meetings, who
shall be called the director of the board; and in case of his
absence or refusal to serve, then the board shall proceed to
the election of another. *Gen. Stat.*, *p.* 410. This section in
the general act concerning boards of chosen freeholders pro-
viding for an election of a director annually implies a term
of office for one year, and this implication is made certain by
the restriction on the power of the board to elect another in
his place to cases of the director's absence or refusal to serve.

The act of May 16th, 1894, gives a term of two years to
the members of the boards of freeholders of counties of the
first class, and provides that on the first Monday in December
next after their election, and on the first Monday in Decem-
ber of each second succeeding year, they shall elect a director.
By this prescription in the act of 1894 of the time when the
director shall be elected, the term of office of any director
elected would continue until a successor could be elected in
compliance with the section providing for the election of a
director, which event could not occur until the period of two
years from the organization of that board had elapsed and a
new board came into existence.

*People* v. *Kilbourn*, 68 *N. Y.* 479, cited by the defendant's
counsel, is not relevant to the construction of the statute now
in question. The contest in that case was over the office of
street commissioner in the city of Albany. The only pro-
vision of the city charter relating to the subject was the tenth
section of the third title, which enacts "that the mayor, with
the consent and approval of the common council, shall bien-
nially appoint" certain ministerial officers, including one

street commissioner, and that "such officers shall continue in office until their successors have been appointed and duly qualified." The relator's title to the office depended wholly upon the construction of this provision. The section in question related exclusively to the power of the mayor, and the court held that the words "shall biennially appoint" meant that the mayor must appoint at all hazards, no matter whether the incumbent in office had served two years or less than that period. The section under consideration in that case related to the power of the mayor and expressly conferred upon him the right to appoint biennially, and an appointee in office held office only until his successor had been appointed and duly qualified.

The seventh section of the general act concerning boards of freeholders (*Gen. Stat.*, p. 410) must necessarily be applied to boards elected under the act of 1894, for otherwise there would be no power in the board to elect another person as director where the director first elected was absent or refused to act. The act of 1894 is an act reorganizing boards of freeholders which theretofore existed in counties of the first class under the general act, and the sixth section of the act of 1894 expressly vests in the boards of freeholders constituted and elected under its provisions all the powers, authority, rights and privileges which were vested in the boards of freeholders of the said counties when the act was passed, and provides that all statutes and parts of statutes in force in anywise applicable to said boards of freeholders in said counties—public, general or special—be in all respects continued in full force and made applicable to the boards of chosen freeholders so constituted and elected under the provisions of the act, except in so far as the same may conflict or be inconsistent with it. The seventh section of the general act being by necessary intendment incorporated in the act of 1894, power of removal is restricted to the conditions under which a director may by that section be removed by the board, namely, absence or refusal to act. In the New York case power was conferred on the mayor to appoint biennially, and his biennial appoint-

ment terminated the term of office of an incumbent. By the seventh section of the act above referred to, the power of the board to elect a successor to a director is restricted to the absence or refusal to serve of the director regularly chosen at the organization of the board.

The counsel of the defendant contend that the board of freeholders may, at any meeting, remove the director and elect another presiding officer in his stead. If by this is meant the election of a presiding officer, when the director is temporarily absent, who shall perform any of the functions and duties of the director other than presiding *pro tempore*, this contention cannot be yielded to. To sustain this contention the defendant's counsel refers to the common law doctrine with respect to the power of amotion incident to the good order and government of corporate bodies, and to the removal of the speaker of the house of commons and the presiding officers of other legislative bodies.

This subject is set at rest by the decision of this court in *State v. Jersey City*, 1 *Dutcher* 536, 539. By the charter of Jersey City, then in force, power was expressly conferred on the common council to expel a member for disorderly conduct or a violation of its rules. The relator was a member of the common council, and, charges having been preferred against him of official corruption and bribery, the common council having investigated these charges, sustained them and removed him from office. Mr. Justice Potts, in delivering the opinion of the court, discussed the power of expulsion existing at common law, and added : "But the jurisdiction exercised in this case is not derived from the common law. The common council is not the corporation, and whatever powers a municipal corporation may have to remove or expel a member for cause at common law, it is clear that the corporation itself has not by any by-law delegated any of them to the common council, and that body, therefore, cannot avail itself of the common law jurisdiction vested as an inherent right in the corporation itself to expel a member of their own body.

The council derives its jurisdiction from the charter of the corporation."

It is quite clear from this extract from the opinion of this court in the case just cited that the power to remove a director does not reside in the board of freeholders, otherwise than in virtue of the seventh section of the general act. To justify the action of the board of freeholders in removing the relator the power must be found in the powers expressly granted to the board to that end by the statute above referred to. The conditions under which the board is authorized to remove its director, as expressed in the seventh section of the act, are his absence or refusal to act. "If the governing statute defines the causes for which an officer may be removed, he cannot be removed for any other cause—the statute being interpreted in conformity with the principle *expressio unius exclusio alterius.*" 1 *Thomp. Corp.*, § 816.

The action of the board in this instance in removing the relator cannot be justified on the ground of his absence or on the ground of his refusal to act. He was present at the meetings of the board on the 6th, 17th, 21st and 30th of December, and presided at each meeting. At the meeting of the 30th, when the resolution declaring his office vacant was acted upon, he presided and declared the resolution out of order, and refused to entertain an appeal from his decision; he refused to permit the roll to be called on the motion to adjourn, and on a *viva voce* vote declared the motion adopted; he then vacated the chair and refused further to preside. That the relator was present at these meetings, and that he served as director, as he understood the duties of his office as director, or at least attempted to do so, is entirely clear. Indeed, the complaint, in the preamble to the resolution removing him from office, relates to the alleged arbitrary conduct of the relator as director, and not to his refusal to act as director.

*Billings* v. *Fielder*, 15 *Vroom* 381, in principle, is pertinent to this part of the case. The contest in that case was over the office of clerk to the board of freeholders of the county

of Hudson. The board was composed of twenty members besides the director-at-large. It met on the 18th of May, 1882. The director declared a motion to proceed to the election of a clerk out of order; he refused to call for nominations, and refused to call for the vote on nominations, and ignored a call for ayes and nays, and took a *viva voce* vote, and declared the motion to adjourn carried, although thirteen, which was more than a majority of the board, protested that the motion was lost. He then left the board, a new director was elected, and Billings, the relator in that case, was elected clerk. Mr. Justice Van Syckel, in delivering the opinion of the court, said: "The general rule of parliamentary law which governs legislative bodies must apply, so far as to enable the board to elect a presiding officer *pro tempore,* to conduct its deliberations in due and orderly form. In such case the authority he can exercise will be merely that of a presiding officer. * * * Assuming the facts to be as presented by the relator, the director-at-large, at the meeting of the 18th of May, was not necessarily or wilfully absent, neither did he refuse to act in his official capacity. On the contrary, he was present and acting, and ruled that the board, by its vote, had agreed to an adjournment. * * * In the absence of the director from a regular meeting of the board, a member could be chosen to act as mere presiding officer, but for an unlawful decision of the director when present at the meeting, the appropriate remedy is by *certiorari,* and for any unlawful refusal on his part to act in the discharge of his official functions, relief may be had by application to this court for *mandamus.*" The court decided that Billings, who was elected in this irregular manner, was not entitled to the office.

The action of the board in removing the relator from office was *ultra vires,* and the instruction of the trial court that the jury should render a verdict in his favor was correct.