BRUCE *v.* MATLOCK.

Opinion delivered June 15, 1908.

1. STATE OFFICER—TERM OF OFFICE—BOARD OF CHARITIES.—The act of April 5, 1893, provided that the Governor shall biennially appoint a board of trustees for the charitable institutions consisting of six members. seven, and provided that "the seventh member of said board shall be appointed upon the passage of this act. and his term of office shall expire simultaneously with that of the other six." The act of May 14, 1907, authorized the board of trustees to "make contracts for the purchase of fuel for twelve months, provided this period shall not extend beyond the tenure of the office of the board." *Held,* that the trustees of the charitable institutions hold office for a period of two years. (Page 558.)

2. SAME—POWER OF GOVERNOR TO REMOVE.—The power to remove a State officer appointed for a fixed term of office does not inhere in the Governor by reason of his having the power to appoint him. (Page 560.)

Appeal from Pulaski Circuit Court; Edward W. Winfield, Judge; affirmed.

*Campbell & Stevenson,* for appellants; *Brooks, Hays & Martin, Marsh & Flenniken,* and *M. P. Huddleston,* of counsel.

1. In the absence of constitutional or legislative restrictions, the power of appointment of an officer carries with it the power of removal, where no definite term of office is fixed. 39 Ark. 211; 13 Pet. 230; 167 U. S. 324; 103 U. S. 232; 189 U. S. 311, 315; 81 Pac. 847; 73 Pac. 496; Throop, Pub. Off. § 304; 26 Mo. App. 673; 88 Mo. 144; 20 Wend. 595; 92 N. Y. 191; 3 S. & R, 145; 54 Pa. St. 233; 6 Coldw. 486; 7 Cal. 97; 25 La. Ann. 119; 71 Conn. 112.

2. There are no constitutional or statutory restrictions upon the power of removal, and no term of office is fixed for the trustees of the State charitable institutions. The act of 1905 (Acts 1905 p. 135-6) does not fix a term of office because (a) it omits the provisions of the previous statutes conferring a definite term, and repeals such provisions. Compare Gantt's Dig. § § 327-357, 358-359, 302-326; Mansfield's Dig. § § 6082-3, 2479, 4529; Sandels & Hill's Dig. § 3928; Kirby's Dig. § § 4129-4133 with present act; 1 Lewis' Suth. Stat. Const. § 270; 82 Ark. 302; 40 N. J. L. 257; 6 B. Mon. 146; (b) The word "biennial" is a word of limitation on the appointing power, and not of grant to the appointee. Cases *supra;* 47 W. Va. 343; 68 N. Y. 479; 68 N. Y. 628.

(c) The phrase "term of office" as used in the proviso is limited to the scope of the enacting clause, and does not imply a technical term of office or fixed tenure. 61 Ark. 502; 73 Ark. 600; 70 Ark. 458; 74 Ark. 534; 46 Ark. 306; 74 Ark. 303; 72 Md. 481.

The power of removal is absolute, and the Governor is the sole judge of the causes therefor. 39 Ark. 215; Throop, Pub. Off. § 354 and cases cited; *Id.* § 361: *Id.* § 394; 6 Current Law, 876; 32 Pa. St. 478; 13 Pet. 230; 182 U. S. 419.

*Chas. Jacobson,* for appellees; *E. L. Matlock,* of counsel.

1.   The power of removal is incident to the power of appointment only when the tenure is not fixed by law, and where the office is held at the pleasure of the appointing power.   36 N. J. L. 101; 43 Pa. St. 375; 19 La. Ann. 210; 1 Cranch, 50; 36 Tex. 546.   There is no right of removal, even where the tenure is during good behavior.   3 S. & R. (Pa.) 145.

*Patton* v. *Vaughan,* 39 Ark. 211, does not apply because (1) the oil inspector was not an officer but an employee, and his appointment as inspector was a mere police regulation; (2) no tenure of office was provided, and the statute limited his right to serve *until removed for misconduct, negligence or incompetency;* (3) the act clearly contemplated removal, at least for the causes named; (4) it was directory merely, and not mandatory upon the county judge to appoint an inspector, and (5) since it permitted a removal for cause, it was held as a corollary that the county judge, the appointing power, was the sole judge of the cause.   The language used in that case does not apply to the Governor of the State.   19 La. Ann. 210.   If the Governor has the power of removal, it must be derived from the Constitution.   36 N. J. L. 101.   He has no power to appoint any one to office unless such power is expressly conferred upon him.   66 Cal. 655.   He has no inherent power to fill vacancies.   110 Cal. 447; Wyman's Administrative Law, § 48, p. 117.   That the power to remove from office is an executive funtion, and is inherent in and belongs *ex officio* to the executive, is contrary to the Constitution and to the principles of all constitutional government.   8 Am. & Eng. Enc. of L. 1402; Cooley, on Const. Lim. 114-115.   See also 36 Mich. 416; Mechem on Pub. Off. 290, 454; Throop, Pub. Off. § 362 and case cited; 36 Tex. 546; 5 Rob. 367; 52 Kan. 750; 3 N. D. 433.

2.   The term "biennial" in the proviso fixes a tenure of office. 15 Hun (N. Y.) 204; 42 Mo. 506.   The best evidence of legislative intent is the use of the word by that body as also by the framers of the Constitution.   Art. 3, § 8, Const.; art. 3, § 16, *Id.* Kirby's Dig. §§ 4185, 4241, 4245.   See further as to legislative intent, Acts 1905, p. 135, § 1; Acts 1907, p. 729, § 3.

3.   By failing to provide for removals, it will be construed that the Legislature did not intend that the power of removal

should be exercised, unless for cause and a notice and an opportunity to be heard. 16 L. R. A. 413.

4. The policy of our laws makes the judiciary rather than the executive the medium through which removal from office should be effected. Art. 7, § 7, Const.; art. 10, § 2, art. 15, § § 1 and 3, Const.; Kirby's Dig., § 2450; *Id.* § 535; *Id.* § 7006; *Id.* § 7992; *Id.* § 7995.

5. There was no vacancy. A vacancy in office is never created by the appointment of a successor to the incumbent. except in the cases where there is no tenure of office, and the incumbent holds at the pleasure of the appointing power. 25 Ohio St. 588; 2 Hill, 103; 41 Md. 152; 19 Am. & Eng. Enc. of L. 432; 3 Ill. 79; 106 Ind. 203; 21 L. R. A. 545. An office is not vacant where there is a *de facto* incumbent. 44 Conn. 318. If a vacancy did exist, had the Governor a right to fill it? Art. 6, § 23, Const.; 72 Ark. 99. See also 36 Mich. 416; 32 N. Y. 355; Mechem on Pub. Off. § § 447-456; 21 L. R. A. 529; 22 La. Ann. 121; 30 Kan. 661.

McCULLOUGH, J. This case involves a determination of the question whether or not the Governor of the State has the power to remove at will members of the board of trustees of the State Charitable Institutions. We hold that the members of said board are by appointment put in office for a fixed term, and that the Governor can not remove them.

The Constitution contains no specific provision concerning the creation of a board of trustees for the control and management of the charitable institutions of the State. Prior to the year 1893 the State institutions for the blind, the deaf mutes and the insane were under the control of separate boards, the statute regulating the appointment of members of each of these boards providing that the Governor should make the appointment biennially on the second Wednesday after the organization of the General Assembly, and that the appointees should hold office for a term of two years.

The General Assembly, by an act which was approved on April 5, 1893, abolished these separate boards and provided that "the Governor shall biennially appoint one board of trustees for the school for the blind, the deaf mute institute, the insane asylum, to be composed of six members, one from each congress-

ional district, who shall have charge of said institutions, and discharge all duties now required by law."

The amendatory act of February 23, 1905, follows the language of the former statute just quoted except that the number of members of the board is increased from six to seven, and contains a proviso that "the seventh member of said board shall be appointed upon the passage of this act, and his term of office shall expire simultaneously with that of the other six."

It is therefore seen that the Legislature long ago adopted the policy of giving to the members of these boards a fixed tenure of incumbency. Doubtless, this policy was inspired by a desire to secure the independent action of the members of the boards, free from any sort of dictation or control.

It is true that the statute consolidating the boards, or rather placing the institutions under control of one board, did not in express terms provide for a definite tenure, but says that the Governor shall appoint the members biennially. This surely does not manifest a legislative disposition to depart from the previously adopted policy and create a board composed of members removable at the will and pleasure of the executive. And certainly the language of the act of April 8, 1905, must be taken as a legislative construction of the former statute to mean a fixed term of two years for the members of the board. If not, why say that "the term of office" of the seventh member "shall expire simultaneously with that of the other six?" The other six must have been thought to have a definite term of office and a definite date for the expiration of the term.

Another legislative construction to the same effect is found in the act of May 14, 1907, authorizing the board of trustees to "make contracts for the purchase of fuel for twelve months, provided, this period shall not extend beyond the tenure of the office of the board."

The word "biennial" means once in two years. We do not say that the use of the word under all circumstanes necessarily imposes a limitation upon the space of time which must intervene. It may, under some circumstances, be held to mean that the thing in question shall occur as often as once in two years. But we think that the use of the word in this instance clearly carries with it the meaning that a term of two years is fixed, and

that appointments to membership on the board shall be made every two years conformably to the expiration of the term. The fixing of a time for making appointments necessarily implies a fixed tenure for the appointee, for if the executive can remove him and appoint another at will the command to appoint biennially is superfluous. *Buffalo* v. *Mackay*, 15 Hun, 204; *Bryan* v. *Patrick*, 124 N. C. 651.

Counsel for appellants rely upon *People* v. *Kilbourn*, 68 N. Y. 479, as sustaining their contention, but such is not the effect of that decision. The court in that case held that the provision for a biennial appointment of an officer did not confer the right upon the appointee to hold the office for two years from the date of the appointment, regardless of the time the appointment should be made. The case involved the construction of a charter provision of a city authorizing the mayor to appoint certain officers biennially, and the court held that this provision related (quoting from the syllabi) "to the time when the appointments shall be made, and was not intended to fix the term of office of the appointee without regard to the time of appointment," and that "where a street commissioner was appointed just prior to the expiration of the term of office of the then mayor, and a new appointment was made by his successor, that the latter appointee was entitled to the office." This doctrine meets with our entire approval, and is not inconsistent with the conclusion reached in the present case.

The term begins, not necessarily from the date of appointment, but from the time fixed by the lawmakers for it to begin. It began with the approval of the act of April 5, 1893, creating the new board, and each succeeding term began biennially thereafter on the same day of the year.

The acts of February 23, 1905, and May 14, 1907, did not undertake to change the date of commencement of the term, and did not have that effect.

The members of the board having been appointed for a fixed term, and as the statute does not confer upon the governor the power of removal, the power does not exist. The right to remove public officers does not inhere in the chief executive of the State. Throop on Pub. Off. § 362; *State* v. *Pritchard*, 36 N. J. L. 101. Under our system of government the executive en-

joys no prerogative in the sense in which that word is usually employed, but he exercises only such powers as are conferred upon him by the Constitution and statutes of the State. These do not authorize him to remove members of the board of public charities. The Governor has nothing to do with the management and control of the charitable institutions of the State, further than to appoint the members of the board biennially.

The Constitution contains an express command to the Legislature to provide by law for the support of institutions for the education of the deaf mutes and for the blind, and for the treatment of the insane. Pursuant to this authority, the lawmakers have placed the control and management of these institutions in a board of trustees composed of seven members, to be presided over by the State Treasurer as *ex officio* member of the board. The Governor is authorized to appoint these members, and there his power in this respect ends. If the Legislature had intended to confer greater or additional powers, it would have been so expressed in the statutes.

Affirmed.