8321

STATE *EX REL.* LYON, ATTORNEY GENERAL, v. RHAME, BANK EXAMINER.

GOVERNOR—OFFICERS—BANK EXAMINER.—Where a statute creates an office to be filled by appointment by the Governor, and fixes the term for which the appointee shall hold, but confers on the Governor no power of removal, he has no power under the Constitution, the statutes or the common law to remove him.

MR. JUSTICE WATTS *and* JUDGE GAGE *dissent.*

*Parsons* v. *U. S.,* 167 U. S. 324, *distinguished from this case.*

Petition in the original jurisdiction of this Court by J. Fraser Lyon, Attorney General, for removal of B. J. Rhame from office of Bank Examiner. H. W. Fraser, the appointee of the Governor, was made a party on his motion.

*Attorney General J..Fraser Lyon,* for petitioner. No argument furnished Reporter.

*Messrs. Stevenson & Prince,* for Rhame. No argument furnished Reporter.

*Messrs. B. L. Abney* and *Geo. L. Rembert,* for Fraser. *Mr. Rembert* cites: *The constitutional authority of the executive:* Con. U. S., art. II, secs. 1, 2; Con., art. IV, secs. 1, 12, 17. *His right to remove under Constitution:* 2 Story 399, secs. 1541, 1542; 1 Lloyd's Debates 351-366, 480-600; 167 U. S. 322; 189 U. S. 310; Con., art. III, sec. 27; 76 S. C. 404. *His statutory and common law rights:* Code 1912, 2347-2349; 2 S. C. 81; 29 Cyc. 1406, 1408; 65 L. R. A. 697; 23 L. R. A. 699; 41 L. R. A. 775; 5 L. R. A. 299; 178 U. S. 577; 78 S. C. 171; 177 U. S. 290; 103 U. S. 227; 189 U. S. 311. *Have the Courts the right to review the reasons and action of the Governor?* Code of 1912, 2347, 2351; 1 Ann. Cas. 293; 177 U. S. 289; 189 U. S. 312; 14 Pet. 497; 128 U. S. 40; 138 U. S. 636; 139 U. S. 306; 29 Cyc. 1409; 54 S. C. 41; 73 S. C. 412; 87 S. C. 474; Code 1912, 3485; 4 McC. 206.

September . 21, 1912. The opinion of the Court was delivered by

Mr. Justice Woods. His Excellency, the Governor, on April 1, 1912, issued his proclamation, reciting acts and omissions which he characterized as neglect of duty by B. J. Rhame, State Bank Examiner, and declaring that he did thereby, for the imputed neglect of duty, remove Rhame from his office. Thereafter the Governor appointed H. W.

Fraser State Bank Examiner. Rhame having refused to
surrender the office, this action was brought by the Attorney
General under title XIII, chapter 2, asking the Court to
adjudge Rhame an intruder in the office and that he be
excluded therefrom. Fraser was made a party and by
answer has alleged that he is the lawful State Bank Exam-
iner under the appointment of the Governor. Rhame by his
answer alleges: First, that the term of office of the State
Bank Examiner is fixed by statute and that the Governor has
no power to remove him; second, that if such power exists it
can be exercised only for cause and after a hearing on the
charge made, and that no hearing was given him on the
charge set out in the proclamation as the cause of removal,
and third, that the charge of misconduct was without
foundation. The defendant Fraser replied to the answer of
Rhame alleging, that the Governor had full power to remove
Rhame, that Rhame had been heard on the charges pre-
ferred against him, that his defense was insufficient, and
that the Governor had found him guilty of neglect of duty
and misconduct and for that reason had removed him. The
Attorney General demurred to Rhame's return.

The first and main question thus raised is whether the
Governor has power to remove from office the State Bank
Examiner. The office of State Bank Examiner was first
created by the act of 1896, Civil Code 1902, secs. 1768 and
1769. That statute provided that he should be appointed
by an advisory board consisting of the Governor, Comptrol-
ler General, Secretary of State, Treasurer and Attorney Gen-
eral, "and hold the said office for two years unless sooner
removed by the advisory board, which board shall fill any
vacancy by an appointment for the unexpired term." In
1906 the act of 1896 was repealed and a new statute enacted,
providing that the Governor should appoint a competent
person as bank examiner, and that in the selection the Gov-
ernor "may advise with the executive committee of the
South Carolina Bankers' Association" (25 Stat. 103).

This act was amended in 1911 (27 Stat. 4), but the amendment does not bear on the tenure of office. The statute of 1906, as amended in 1911, provides: "The term of the office of said bank examiner shall be four years and he shall receive as compensation therefor three thousand dollars per annum," etc., but no power of removal is conferred on the Governor, nor is any reference made to the subject of removal.

The question then comes to this: when a statute creates an office to be filled by appointment of the Governor and fixes the term for which the appointee shall hold, but confers on the Governor no power of removal, does the Governor, nevertheless, have the power of removal under the Constitution or the statute law of the State or under the common law?

Laying aside for the moment the Constitution and the statute law of the State, we consider the common law rule as established by judicial expression. Surely, men of common sense, learned and unlearned, would be surprised to find the law to be that when the legislative department has created an office to be filled by appointment of the Governor and extended and limited its term to four years, yet the governor could at will shorten the term by removal, although no power of removal has been conferred. Such executive power is denied by both reason and authority.

The Governor, as chief executive, has no prerogative control over officers such as is held by the king of Great Britain. The power of removal from office, therefore, is not an incident of the executive office and exists only where it is conferred by the Constitution or by the statute law, or is implied from the conferring of the power of appointment.

In *Sanders* v. *Belue,* 78 S. C. 177, 58 S. E. 762, this Court held that the absolute power of removal at pleasure is incident to the power of appointment, *unless the law provides duration of the official term* or mode of removal.

In *Hardy* v. *Reamer,* 84 S. C. 487, 66 S. E. 678, the statute authorized the city council to establish a board of police commissioners, and set their terms of office. After establishing the board and selecting its members, the city council undertook to abolish the board. In an opinion delivered on the Circuit and adopted by this Court Judge Ernest Gary thus clearly states the principle:

"The power given the mayor and aldermen is that of electing or appointing members of the board provided for by the act. In exercising this power they act as executives, as the appointing to office is an executive and not a legislative function. Having exercised this power by electing or appointing plaintiffs to the offices provided for by the act, and being neither authorized to remove such officers or to abolish such offices, created by a superior sovereignty, their power is exhausted, and they cannot remove plaintiffs, either directly or by abolishing their offices, so long as their terms are unexpired."

These cases laying down the rule in this State that the power of removal is not incident to the power of appointment, where the extent of the term of office is fixed by the statute, and not subject to be shortened, are buttressed by unbroken authority in other jurisdictions. *Avery* v. *Tyringham,* 3 Mass. 177; *People* v. *Robb* (N. Y.), 27 N. E. 267; *Reilly* v. *Chatfield,* 71 Conn. 112, 40 Alt. 922; *State* v. *Dahl,* 140 Wis. 301, 122 N. W. 748; *Bruce* v. *Matlock,* 86 Ark. 555, 111 S. W. 990.

In *People* v. *Robb, supra,* the New York Court of Appeals says that the following provision of the Constitution of New York was an embodiment of the generally recognized rule: "When the duration of any office is not provided by the Constitution, it may be declared by law, and, if not so declared, such office shall be held during the pleasure of the authority making the appointment." In *Marbury* v. *Madison,* 1 Cranch, 138, 2 Law Ed. 60, Chief Justice Marshall thus stated the general rule: "Mr. Marbury, then, since his

commission was signed by the President, and sealed by the Secretary of State, was appointed; and as the law creating his office, gave the officer a right to hold for five years, independent of the executive, the appointment was not revocable, but vested in the officer legal rights, which are protected by the laws of his country." * * * "It has been created by special act of Congress, and has been secured, to the person appointed to fill it, for five years." This rule was restated and recognized in *McAllister* v. *U. S.,* 141 U. S. 174, 35 Law Ed. 693; *Ex parte Hennen,* 13 Peters 230, 10 Law Ed. 138; *Reagan* v. *U. S.,* 182 U. S. 419, 45 Law Ed. 1162.

At the argument the case of *Parsons* v. *U. S.,* 167 U. S. 324, 42 Law Ed. 185, was mainly relied on as completely overturning the rule stated, and laying down the rule that the power of appointment implies the power of removal even where the term of office is fixed by the statute which confers the power of appointment, and no power of removal is expressed.

The case does not bear that construction. On the contrary, the entire opinion of Justice Peckham rests on the argument that under the Constitution and statutes of the United States, the office of district attorney and like Federal offices fall without the general rule and are not controlled by it. The Federal statute provided: "District attorneys shall be appointed for four years and their commissions shall cease and expire at the expiration of four years from their respective dates." After consideration of the powers bestowed by the Constitution on the President to remove officers, and an elaborate review of the acts of Congress, on the subject, the Court holds that the debates in Congress, the history of congressional action on the subject, and the statutes themselves show that four years was fixed as a *limitation* on a term which was at one time indefinite, and that in so limiting the term it was not the intention of the Congress to interfere with the President's power of removal which he had when the term was

indefinite, and so under the Constitution subject to his power of removal. It is on this ground that the Court distinguishes the case and takes it out of the general rule laid down in *Marbury* v. *Madison.*

Thus it appears, we think, beyond controversy that the Parsons case is in nowise opposed to the rule that the power of removal is not an incident of the power of appointment if the length of the term is fixed by statute and no authority to remove is conferred by the statute.

Not only does the common law deny the power of removal as an incident of the power of appointment when the term of office is fixed by the statute and the power of removal not expressed, but the Constitution and statutes of the State strongly negative such a power.

The Constitution by expressly conferring on the Governor the power, section 8, article XII, to remove the officers of charitable and penal institutions "until the next session of the General Assembly and until a successor or successors shall be appointed," impliedly negatives the intention to bestow the power to remove other officers; and the conferring, by section 22, article IV, of the lesser power to suspend officers for the grave offense of embezzlement, and that only on a true bill found, and providing that there shall be removal only after conviction, negatives the intention to bestow the larger power of removal without a true bill and without conviction, on a charge less grave than embezzlement.

The statute law of the State by the strongest implication denies the authority to remove here asserted. Public officers are created for the benefit of the commonwealth, incumbents have no contract or property rights in them, and, unless it be otherwise provided by the Constitution, they are subject entirely to legislative control. Hence, subject to the Constitution, the General Assembly may fix the term, provided for removal, abolish the office, reduce the term, and in every respect control the existence, powers,

emoluments, and tenure of public officers. In the exercise of this power the General Assembly has, with assiduous care, provided that the removal of even minor and local officers should take place only after indictment and conviction of misconduct—as instance the provisions for the removal of all local officers by sections 388 and 389 of the Criminal Code only on trial and conviction; or has provided that they should be merely suspended by the Governor, and be removed only on consent of the Senate—as instance the provision made for the suspension and removal of county auditors and treasurers, Civil Code 1902, sections 340 and 398; or has enacted that they should be removed by judicial decree in a civil action as provided in the article of the Code of Procedure under which this action was brought.

When a different policy was intended the tenure has been expressly stated to be subject to removal, as in the case of the dispensary directors and the election commissioners whose tenure was made subject to removal by the Governor, Criminal Code 1902, section 556; Civil Code, section 206. There is no escape from the conclusion that the Governor has no power to remove the State Bank Examiner.

The duties of the State Bank Examiner extend over the entire State, but he is not elected by the people at large, hence he is not an officer removable only by impeachment; for the rule was thus laid down in *McDowell* v. *Burnett, ante,* 469: "Every executive and judicial officer whose authority and jurisdiction extends over the entire State—in whose official conduct the entire State is concerned—and whose office was created by the Constitution, or created by statute and filled by election by the people at large, is removable by impeachment or by the Governor on address of the General Assembly, or by conviction of embezzlement or appropriation of trust funds and in these modes only. All other officers are subject to removal under the provisions

of the statute law of the State or under the common law where that is applicable."

Under this rule the General Assembly in creating the office of State Bank Examiner might have provided that the term should be four years subject to be shortened by removal by the Governor or on the happening of any other contingency. But it did not see fit to do so. The wisdom of legislative action is without the sphere of judicial inquiry. It may be that fixing the term of the office of State Bank Examiner rigidly at four years in the last statute, when by the earlier statute it had been fixed at two years subject to be shortened by removal, was an oversight; or it may be the change was due to an intention to make an officer, clothed with so much discretion and power and charged with such great responsibility in safeguarding, by his supervision, enormous public and private interests, entirely independent of any outside influence and removable only by a civil action under the Code of Procedure. These questions are not for us. The Court can only declare that under the law as it exists the State bank examiner is not subject to removal at the discretion of the Governor, and that the defendant, B. J. Rhame, is still State Bank Examiner.

This conclusion makes unnecessary the consideration of the other questions argued, and it is, therefore, ordered and adjudged that the petition be dismissed.

MR. CHIEF JUSTICE GARY. *I concur* in the opinion of Mr. Justice Woods, for the reason that the law does not provide for the removal of the State Bank Examiner by the Governor, as it does in the case of magistrates.

MR. JUSTICE FRASER *disqualified*.

MESSRS. JUSTICES HYDRICK *and* JUDGE T. S. SEASE, *Acting Associate Justice, and* CIRCUIT JUDGES PRINCE, WILSON, RICE, FRANK B. GARY *and* SPAIN *concur*.

MR. JUSTICE WATTS, *dissenting.* I cannot concur in the opinion of Mr. Justice Woods in this case that the Governor did not have the power to remove Rhame as bank examiner and appoint Fraser in his stead. There is not the slightest doubt, in my mind, but that he had the power, both by reason and authority, and while the cases of *Sanders* v. *Belue,* 78 S. C. 177, 58 S. E. 762, and *The State* v. *Ansel,* 76 S. C. 395, 37 S. E. 185, are not exactly decisive of the precise point at issue, yet the inference to be drawn from these cases are that the Governor had ample and plenary power to remove any one appointed by him to office where there was no express provision to the contrary in the act creating the office. I cannot see how the created can be greater than the creator. I think, under the Constitution and statute law of the State, the Governor has the right to remove from office any one appointed by him to office where there was no express provision in the act creating the office to the contrary, for incapacity, neglect of duty, misconduct, etc. The Governor is charged with executing the laws and has the innate and inherent power to remove any appointee of his for failure to perform the duties of the office to which he has been appointed where the act creating the office is worded like the act creating the office of bank examiner in this case. The office of bank examiner is not, in my opinion, a constitutional office. It is one of immense importance and he has great powers for good and evil in looking into the banking institutions created under the laws of the State. The constitutional convention of 1895 was so careful to guard the interests of depositors in the banks that by a constitutional provision it discriminated against and increased the liabilities of the stockholders in banks more than the stockholders of any other institutions. Money is not deposited in banks alone by persons who are competent to manage their affairs, but a great deal is deposited there under the orders of Court, such as estate money, widows' and orphans' money, money in litigation,

etc. One of the objects in creating the office of bank examiner was that he inspect the condition of the bank's affairs rigidly and see that the officials of the bank conduct them as the law required. Now, to say that a bank examiner who is appointed for four years, after he gets his appointment, can neglect his duties, be guilty of misconduct, be incapable, be guilty of the sins of both commission and omission, cannot be removed by the Governor, who appointed him, for any of the reasons enumerated or for wilful misconduct, because the act creating the office fixes the tenure and gives no right of removal, is a doctrine that I will never subscribe to until a majority of the Court decides to the contrary. We have no binding authority to the contrary, and even if we did have, I would be in favor of overruling it. In the case at bar, it is being decided by the highest Court in the State, the Court *en banc,* where the Circuit Judges have been called to the assistance of the Supreme Court, and in the absence of any binding authority to the contrary I do not intend to be bound by any moss-covered, antiquated rules, but be governed by what, in my opinion, is in consonance with reason, common sense and the exigencies demanded by an enlightened and progressive age. It is far preferable that an officeholder, appointed under such a statute as the bank examiner, should be removed by an erroneous, arbitrary exercise of power or even by tyrannical abuse of the power on the part of the Governor than to say that he cannot be removed for incapacity, misconduct or neglect of duty. Even to exercise the powers of removal in this way would be less injurious to good government and would command more respect for the laws of the State. To hold that he cannot be removed for these causes, in my opinion, will stagger and surprise citizens of the State and weaken the enforcement of the laws by the executive department, made by the legislative department and construed by the judicial branch of the government.

30—92

As to whether Mr. Rhame could be removed without a hearing, I do not think that question is properly here, as when the Governor called on him to explain, he contented himself with challenging the right of the Governor to remove him and he thereby waived his right to be heard.

I think the judgment of the Court should be that the defendant, Rhame, be ousted from office.

JUDGE GAGE, *dissenting*.  I think the Governor had the power to remove the bank examiner.

If he had not, then in a supposed case, admitted to be flagrant, and touching the most sensitive interests of the people, the Governor, sworn to "take care that the laws shall be faithfully executed," is powerless to execute them.

In such a case the examiner might accept from the banks bribe money; he might refuse to make any examination; he might be convicted of crime; and the Governor would be powerless to act.

Such a result ought not to be abided, except upon the plainest mandates of the law, and from which there is no escape.

The banks carry the arterial blood of the business world, it ought to reach the people quickly, free from taint of suspicion.

A broken bank is like a poisoned spring of water; it affects the whole community, stockholders and strangers; its evil effects last for a generation.

The risk of such a disaster ought not to be taken by that construction of the law which will promote bank failures.

If there is an officer in the State who needs to be kept closely at his work, and always on the alert, he is the bank examiner.

If the Governor is robbed of the power to exact such a performance by the examined, and if such exaction is necessary, who will do it?

The Constitution only prescribes, in the article on corporations, that the General Assembly shall provide by law for the thorough examination of banks.

The General Assembly only provided that the Governor shall appoint a competent person to examine the banks; the term of service was fixed at four years; no provision was made in the act, or elsewhere in the statutes, for the removal of such an officer.

The Constitution, it is claimed, limits the power of the Governor.

The section relied upon is found in the article on impeachments, and is section 4 of that article.

It is confessedly irrelevant to this case unless the bank examiner is an executive officer liable to impeachment.

It is inconceivable that an officer of that character, created under a general provision of the Constitution, should be subject to trial by impeachment.

Such a construction is calculated to bring the administration of law into ridicule.

The General Assembly evidently thought that the examiner might be removed otherwise than by impeachment; for in the first act on the subject, another mode of his removal was *explicitly* prescribed. Code of Laws, section 1768.

There is no reason to dogmatically classify every officer of the State as either executive or judicial; and if there was, the framers of the Constitution never intended that an executive officer like a bank examiner was subject to trial by impeachment; they only provided for the impeachment of such executive or judicial officer as were liable to that procedure. Nor did they intend that he could only be removed upon an address of two-thirds of the General Assembly, in the event there was not sufficient ground for impeachment.

When it has been once admitted that the General Assembly had the power which it undertook to exercise in section

1708 of the Code of Laws, then the article on impeachments has no relevancy to this case.

The circumstance that the Constitution has limited the Governor's power to suspend officers guilty of embezzlement (article IV, section 22), and officers of penal and charitable institutions (article XII, section 8), does not warrant the conclusion that it was intended to limit his power in the case at bar.

But rather the contrary conclusion is inferable; the circumstances that his power was limited in particular cases implies that in other cases it was not limited.

This case is rather governed by article III, section 27, of the Constitution.

Reference there is made simply to "Officers," not executive and judicial officers; and for any neglect of duty by them, wilful or not, they may be removed as the law provides; for the Constitution, they thought, in the article on impeachments provided no remedy, else why this.

It must be conceded that there is no statute "law" provided, and the law referred to includes the common law and must be governed by that law.

The issue, therefore, is this, if such an officer be confessedly guilty of a neglect of duty midway his term of office, is he exempt from removal by any power? For if not subject to this power, then to none. The question ought to furnish the answer.

Admittedly the power to be exercised by the Governor is not arbitrary, nor at will; it must be for cause, and cause will move any man from any office, any time.

The next issue is a mixed one of law and fact, and it is, has the Governor given the examiner a right to be heard before his removal?

Perhaps it was not such a hearing as Courts give litigants; but it was a hearing, and it would not be wise for the Courts to hamper the executive by set rules to govern him in his execution of the laws.

Nor is it wise to weigh too nicely the evidence upon which he acted.

If injustice has thereby been done, it will be incomparable to that statement of the law which will paralyze all Governors in their efforts to preserve the fiscal institutions of the State.

Finally, in my opinion this cause is controlled by the case of *The State ex rel. Rawlinson* v. *Ansel, Governor,* 76 S. C. 395, 37 S. E. 185.

The dispensary commissioners were as much executive officers as is the bank examiner.

The Constitution and the statutes also made provision for them. It is true the statute provided that the Governor might remove them; but if the case was controlled by the Constitution, in the article on impeachments, that provision of the statute was of no force.

In that case Governor Ansel removed the commissioners, and his act was sustained.

I am of the opinion that H. W. Fraser is the lawful bank examiner of the State.