The Honorable Gene Roebuck State Senator P.O. Box 1696 Jonesboro, AR 72403-1696
Dear Senator Roebuck:
This is in response to your request for an opinion on the following questions:
 1. Regarding Teacher Retirement Board meetings — Does a board member need to submit a letter 20 days in advance and does a board member need to put in writing the items they wish to confabulate?
 2. Regarding Teacher Retirement Board member sitting on Board and holding a public elected office — Is this legal or a conflict of interest?
 3. Regarding Mr. Gus Wingfield sitting on Teacher Retirement Board, writing warrant checks for the Retirement System and renting floor space from the Teacher Retirement System — Is this a conflict of interest?
It is my opinion that the answer to your first question will depend upon the particular rules of procedure adopted by the Arkansas Teacher Retirement System Board of Trustees ("Board").[1] In this regard, although I have not reviewed the Board's rules of procedure, it appears from correspondence attached to your request that the rules specify such a requirement with respect to the submission of a letter twenty days in advance of a meeting. I am uncertain whether this applies to Board members as well as to members of the general public. I cannot construe or interpret the rules, as this would involve factual determinations concerning the exact intent of the Board. Such matters ordinarily are not within the scope of an opinion from this office. As a general matter, however, it is my opinion that the Board has the authority to promulgate a rule to this effect, pursuant to A.C.A. § 24-7-304(d).
With regard to your second question, it is apparent from the correspondence attached to your request that this is directed toward theex officio members specified under A.C.A. § 24-7-301 as follows:
 The general administration and responsibility for the proper operation of the system and for making effective the provisions of this act are vested in a board of trustees of fifteen (15) persons as follows:
 (1) The Bank Commissioner, the Treasurer of State, the Auditor of State, and the Director of General Education shall be ex officio trustees.
A.C.A. § 24-7-301(1) (Supp. 1997) (emphasis added).
The statute thus clearly provides for the ex officio membership of the above-specified elected officials. This statute is presumed constitutional. See generally Urrey Ceramic Tile Co. v. Mosley,304 Ark. 711, 805 S.W.2d 54 (1991). My review indicates, moreover, that the statute would likely be upheld in the event of a constitutional challenge. So-called "dual office holding" is prohibited under Article19, Section 6 of the Arkansas Constitution, which provides:
 No person shall hold or perform the duties of more than one office in the same department of the government at the same time, except as expressly directed or permitted by this Constitution.
There is no specific provision in the Arkansas Constitution for dual office-holding except in the instance of the sheriff and collector of taxes (Article 7, Section 26) and militia officers, officers of the public schools, and notaries (Article 19, Section 26). See Marshall v.Holland, 168 Ark. 449, 270 S.W. 609 (1925). However, the prohibition in Article 19, Section 6, supra, has not prevented the legislature from imposing additional duties on particular executive officers. See, e.g.,Sparling v. Refunding Board, 189 Ark. 189, 71 S.W.2d 182 (1934). The court in Sparling rejected a challenge under Art. 19, § 6 to an act which created a "Refunding Board" composed of the Governor, Lieutenant Governor, Treasurer of State, Secretary of State, State Auditor, Attorney General and State Bank Commissioner, stating:
 [T]he members of the Refunding Board are not holding or performing the duties of more than one office, membership on said board not being an additional office, but only additional duties imposed by the act on the holders of the respective offices. . . . [N]ew duties are imposed on existing executive officers. The executive State officers are now members of various boards and have, for a long period of time served thereon, such as the State Board of Election Commissioners, State Burning Board, State Printing Board, etc., and many others in the past which have been abolished. See Bruce v. Matlock, 86 Ark. 555, 111 S.W. 990; Russell v. Cone, 168 Ark. 989, 272 S.W. 678.
189 Ark. at 192.
I believe the court would similarly view A.C.A. § 24-7-301(1), supra,
which designates the Bank Commissioner, Treasurer of State, and Auditor of State as "ex officio trustees." The term "ex officio" means: "From office; by virtue of the office; without any other warrant or appointment than that resulting from the holding of a particular office." Black's LawDictionary 516 (5th ed. 1979). It has thus been stated with regard to a state constitutional provision similar to Article 19, § 6 that:
 [t]he rule here enforced with respect to double or dual office holding in violation of the constitution is not applicable to those officers upon whom other duties relating to their respective offices are placed by law. A common example is ex officio membership upon a board or commission of the unit of government which the officer serves in his official capacity, and the functions of the board or commission are related to the duties of the office. [Citations omitted.] Ex officio
means `by virtue of the office.'
Ashmore v. Greater Greenville Sewer District, 211 S.C. 77, 92,44 S.E.2d 88 (1947).
Although my research has yielded no Arkansas case directly on point, the analysis in Sparling, supra, leads me to conclude that the ex officio
service prescribed in § 24-7-301(1) would likely not be considered as within the purview of the dual office prohibition. Accord Bruce v.Matlock, 86 Ark. 555, 111 S.W. 990 (1908) (noted in Sparling and involving the board of trustees of the State Charitable Institutions, which was presided over by the State Treasurer as ex officio member).See also Smith v. Faubus, 230 Ark. 831, 327 S.W.2d 562 (1959) (although not addressing Art. 19, § 6, upholding service of Governor, Attorney General and Lieutenant Governor as ex officio members of the State Sovereignty Commission). This principle appears to be recognized in several other jurisdictions, in addition to South Carolina as set out above. See, e.g., State ex rel. McManamon v. Felger, 102 N.E.2d 369
(Ind. 1951) and Texas Turnpike Authority v. Shepperd, 279 S.W.2d 302
(Tex. 1955).
It is my opinion that the answer to your third question, involving the lease of office space to the Auditor of State, is "no." There is no prohibited conflict of interest simply by virtue of the lease of space to the State Auditor, who sits on the Board. The lease is to the office of Auditor of State, not to Mr. Gus Wingfield personally. Nor is there any suggestion that Mr. Wingfield has a pecuniary interest apart from that which is incidental to his official position. See A.C.A. §21-8-1001(a)(2) (Repl. 1996) (providing that members of state boards and commissions may participate in or influence an official decision "if the only pecuniary interest that may accrue to the member is incidental to his or her position. . . .")
Thus, the mere fact that Mr. Wingfield sits on the Board, pursuant to A.C.A. § 24-7-301(1), supra, does not generate a conflict. The ethical standards focus, instead, on the use of an official position "to secure unwarranted privileges or exemptions. . . ." A.C.A. § 21-8-1002
(governing members of state boards and commissions). I am unaware of any facts suggesting a violation of this provision. It should perhaps also be noted in this regard that the various bidding requirements under the Arkansas Purchasing Law do not apply to leases on real property. See
A.C.A. § 19-11-203(5) (Repl. 1994) (excluding leases on real property from the definition of "commodities.")
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] Arkansas Code Annotated § 24-7-304(d) (Supp. 1997) provides that the Board "shall adopt its own rules of procedure. . . ."